**Danny T. BARNES, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 99–883C.

United States Court of Federal Claims.

June 30, 2003.

Eugene R. Fidell, Washington, D.C. for the plaintiff.

Joseph Trautwein, Department of Justice, Washington, D.C., with whom was Acting Assistant Attorney General David W. Ogden; David Cohen, Director; and Bryant Snee, Assistant Director; with whom was LCDR Jillian L. Morrison, United States Navy Office of the Judge Advocate General, Washington, D.C.

## OPINION

MEROW, Senior Judge.

Plaintiff, Navy Lieutenant Barnes, was nominated by the President of the United States and confirmed by the Senate for promotion to lieutenant commander. His promotion was delayed and later his name was removed from the promotion list. He alleges that the delay and removal of his name from the promotion list was not in accordance with statutory and regulatory procedure and, as a result, he is statutorily entitled to monetary consequences attendant that promotion. The government opposes. Both parties filed a motion for judgment on the administrative record pursuant to Rule 56.1 of the Rules of the Court of Federal Claims. These motions are now before the court.

**Summary:**

Lt. Barnes' nomination for promotion to lieutenant commander in the United States Navy was submitted to the Senate by then President Bill Clinton on October 29, 1997, and confirmed by the Senate on November 8, 1997. 143 Cong. Rec. S11390, S11391 (daily ed. Oct. 29, 1997), 143 Cong. Rec. S12214–03 (daily ed. Nov. 8, 1997). The projected effective date of his promotion was April 1, 1998. By memorandum dated March 17, 1998, Lt. Barnes was informed that his promotion was delayed pending completion of

administrative and disciplinary action related to nonjudicial punishment he received for conduct unbecoming an officer. Lt. Barnes did not receive this notice until April 21, 1998. Ratification by the Secretary of the Navy and an additional delay was requested on August 14, 1998, and approved on August 24, 1998. On April 26, 1999, Lt. Barnes' name was removed from the promotion list. Lt. Barnes alleges the delay and the removal of his name from the promotion list did not comply with statutory and regulatory provisions and the conditions placed on the delay by the Navy. He also contends the subsequent decision of the Navy Board for Correction of Military Records not to grant him relief was arbitrary and capricious.

**Statutory and regulatory framework for military promotions**

Evaluation and recommendation of eligible officers for promotion is made by a selection board of commissioned officers. 10 U.S.C. §§ 611–17, 622–23. The board's promotion list is forwarded through the Secretary of the Navy for recommendation, to the Secretary of Defense for approval, and then to the President of the United States. 10 U.S.C. §§ 618(b), 624(a)(1) and (c). The President, with the advice and consent of the Senate, has the authority to promote.

[The President] shall have Power, by and with the Advice and Consent of the Senate . . . [to] nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States.

United States Constitution, art. II, § 2, cl. 2.

Statutory provision is similar. 10 U.S.C. § 624(c) provides:

Appointments under this section shall be made by the President, by and with the advice and consent of the Senate, except that appointments under this section in the grade of first lieutenant or captain or lieutenant (junior grade) or lieutenant shall be made by the President alone.

Following Presidential approval of the selection board's report, the names of all officers approved for promotion are listed in order of seniority. When additional officers in that grade and competitive category are needed, the most senior name is chosen and the promotion (or appointment) occurs. 10 U.S.C. § 624(a)(1). The promotion is effective on the date of appointment. Secretary of the Navy Instruction ("SECNAVINST") 1420.1A ¶ 22; Def.App. p. 10.

**A. Statutory promotion**

Officers "shall" be promoted in list order except as provided in 10 U.S.C. § 624(d) which provides for delays under limited circumstances:

Except as provided in subsection (d), officers on a promotion list for a competitive category **shall** be promoted to the next higher grade when additional officers in that grade and competitive category are needed. Promotions shall be made in the order in which the names of officers appear on the promotion list and after officers previously selected for promotion in that competitive category have been promoted.

10 U.S.C. § 624(a)(2)(emphasis added).

**B. Promotion delay**

The promotion "shall" occur unless: (1) there are court-martial charges pending against the officer; (2) an investigation is being conducted to determine if any disciplinary action should be taken against the officer; (3) a Board of Inquiry has been convened to review the officer's records; or (4) state or federal criminal charges are pending against the officer. The officer "shall" be promoted in list order upon favorable conclusion of any of these proceedings [1] unless

---

1. Subsection (d)(1) is clear that upon favorable conclusion of any of these proceedings, the officer's promotion "shall" occur, retroactively if necessary:

If no disciplinary action is taken against the officer, if the charges against the officer are withdrawn or dismissed, if the officer is not ordered removed from active duty by the Secretary concerned under chapter 60 of this title, or if the officer is acquitted of the charges brought against him, as the case may be, then unless action to delay an appointment has also been taken under subsection (d)(2) the officer **shall** be retained on the promotion list and

there is cause to believe that the officer is unqualified for the promotion under subsection (d)(2), the fifth and last statutory basis for delay. 10 U.S.C. § 624(a)(2) provides:

Under regulations prescribed by the Secretary concerned, the appointment of an officer under this section may be delayed if—

(A) sworn charges against the officer have been received by an officer exercising general court-martial jurisdiction over the officer and such charges have not been disposed of;

(B) an investigation is being conducted to determine whether disciplinary action of any kind should be brought against the officer;

(C) a board of officers has been convened under chapter 60 of this title to review the record of the officer; or

(D) a criminal proceeding in a Federal or State court is pending against the officer.

The fifth grounds, 10 U.S.C. § 624(d)(2), provides for delay if there is cause to believe that the officer is unqualified for the promotion. If the officer is later found to be qualified, the promotion "shall" occur, again retroactively if necessary.

Under regulations prescribed by the Secretary concerned, the appointment of an officer under this section may also be delayed in any case in which there is cause to believe that the officer is mentally, physically, morally, or professionally unqualified to perform the duties of the grade for which he was selected for promotion. If the Secretary concerned later determines that the officer is qualified for promotion to such grade, the officer shall, upon such promotion, have the same date of rank, the same effective date for pay

and allowances in the higher grade to which appointed, and the same position on the active-duty list as he would have had if no delay had intervened, unless the Secretary concerned determines that the officer was unqualified for promotion for any part of the delay. If the Secretary makes such a determination, the Secretary may adjust such date of rank, effective date of pay and allowances, and position on the active-duty list as the Secretary considers appropriate under the circumstances.

SECNAVINST 1420.1A, ¶ 23, which echoes the statutory requirements, contains the Navy's policies and procedures governing promotion delays. Notably a delay in appointment must be ratified by the Secretary of the Navy "as soon as practicable."

a. **Criteria for Promotion Delay.**

CHNAVPERS [2] or CMC,[3] as appropriate, or a member's commanding officer, may delay the appointment of an officer selected for promotion. If the appointment is delayed, the delaying officer shall, as soon as practicable, forward the information required by paragraph 23b to SECNAV [4] for ratification. Promotion may be delayed under this instruction if:

(1) Sworn charges against the officer have been received by an officer exercising general court-martial jurisdiction over the officer and such charges have not been disposed of.

(2) An investigation is being conducted to determine whether disciplinary action of any kind should be brought against the officer.

(3) Processing for separation for cause has been initiated under reference (h).[5]

(4) A criminal proceeding in a Federal or state court is pending against the officer.

---

shall, upon promotion to the next higher grade, have the same date of rank, the same effective date for the pay and allowances of the grade to which promoted, and the same position on the active-duty list as he would have had if no delay had intervened, unless the Secretary concerned determines that the officer was unqualified for promotion for any part of the delay. If the Secretary makes such a determination, the Secretary may adjust such date of rank, effective date of pay and allowances, and position on the active-duty list as

the Secretary considers appropriate under the circumstances.

2. Chief of Naval Personnel.

3. Commandant of the Marine Corps.

4. Secretary of the Navy.

5. SECNAVINST 1920.6A.

(5) There is cause to believe that the officer is mentally, physically, morally, or professionally unqualified.

### b. Command Requests for Delay

(1) Commanding officers who consider delay of an officer's promotion warranted and delay an officer's promotion, shall submit justification for the delay to SECNAV via, CHNAVPERS (MNPC–82) (copy to COMNAVMILPERSCOM [6] (NMPC–22)), or CMC (MMPR–1) as appropriate, within 10 days of knowledge of the circumstances warranting the delay, or as soon thereafter as practicable.

(2) Each justification for delay to SEC-NAV must include the following documents:

(a) A copy of the notification to the officer and;

(b) A statement by the officer. If the officer declines to make a statement, the officer concerned shall submit a signed statement to that effect;

(c) Supporting rationale for delay from the officer's commanding officer based on his or her knowledge of the officer involved; and

(d) A recommendation by CHNAVPERS or DC/S (M & RA),[7] as appropriate.

10 U.S.C. § 624(d)(3) sets additional conditions and limits on promotion delays. Notice must be given to the officer before the effective date of the promotion unless it is "impractical" to do so, in which instance notice must be given as soon as practical:

(3) The appointment of an officer may not be delayed under this subsection unless the officer has been given written notice of the grounds for the delay, unless it is impracticable to give such written notice before the effective date of the appointment, in which case such written notice shall be given as soon as practicable. An officer whose promotion has been de-

layed under this subsection shall be afforded an opportunity to make a written statement to the Secretary concerned in response to the action taken. Any such statement shall be given careful consideration by the Secretary.

Delay may not be longer than six months unless the Secretary specifies a further period of delay. In no instance may delay be more than eighteen months from the original effective date of promotion—here April 1, 1998. 10 U.S.C. § 624(d)(4):

An appointment of an officer may not be delayed under this subsection for more than six months after the date on which the officer would otherwise have been appointed unless the Secretary concerned specifies a further period of delay. An officer's appointment may not be delayed more than 90 days after final action has been taken in any criminal case against such officer in a Federal or State court, more than 90 days after final action has been taken in any court-martial case against such officer, or more than 18 months after the date on which such officer would otherwise have been appointed, whichever is later.

### C. Removal from the promotion list

The President may remove an officer's name from the promotion list. 10 U.S.C. § 629(a):

(a) The President may remove the name of any officer from a list of officers recommended for promotion by a selection board convened under this chapter.

Under Navy regulations, an officer may be removed from a promotion list only during a period of delay:

**e. Removal from the Promotion List.** If during a delay of promotion, it is determined that removal from the promotion list is appropriate, removal action under paragraph 17a [8] may be initiated. Although

---

6. Commander, Naval Military Personnel Command.

7. Deputy Chief of Staff (Manpower and Reserve Affairs).

8. Paragraph 17a provides:

**a.** SECNAV may remove the name of any officer from a promotion list to any grade below 0–7. CHNAVPERS or CMC, as appropriate, may submit requests for such action to SECNAV. In the case of officers on a promotion list for the grades 0–7 and above,

removal action is contemplated, requests for delay extensions as provided in paragraph 23d shall be submitted to SECNAV as necessary until the officer's name is removed from the promotion list.

SECNAVINST 1420.1A, ¶ 23e.

## Factual summary

Nonjudicial punishment proceedings against Lt. Barnes were held at Misawa, Japan on November 24, 1997. Lt. Barnes was found guilty of five specifications of the Uniform Code of Military Justice and seven days of restriction were imposed. A.R. II, pp. 19–20. The charges concerned attempts to arrange off-duty liaisons with enlisted women, two of whom were his subordinates. A.R. II, p. 16–17. He did not file an appeal. On December 12, 1997, his commanding officer reported his nonjudicial punishment and recommended that while he should remain on the promotion list, Lt. Barnes should be the last on the list to be promoted, but he should not be required to show cause why he should be retained in the Navy. A.R. II, p. 15.

A March 17, 1998 memorandum to Lt. Barnes stated his promotion was delayed. The memorandum cited his nonjudicial punishment and stated that he may not be qualified for promotion. The delay was until "all related administrative or disciplinary action is completed." A.R. II, p. 39. Lt. Barnes did not receive this memorandum until April 21, 1998. Starting on April 1, 1998, his projected promotion date, he received pay at the higher rank for a year.

On March 19, 1998, a Show Cause Authority determined that Lt. Barnes should show cause why he should allowed to remain in the Navy. Citing the prior imposition of nonjudicial punishment, the Board of Inquiry on May 27, 1998 determined he had engaged in conduct unbecoming an officer, failed to demonstrate acceptable qualities of leadership, and failed to conform to prescribed standards of military deportment. By a vote of 2 to 1, the Board recommended that Lt. Barnes be permitted to remain in the Navy. A.R. V, pp. 1–51.

CHNAVPERS or CMC, as appropriate, shall provide a request for removal action to the

By an August 14, 1998 request, approved on August 24, 1998, the March 17, 1998 delay of Lt. Barnes' promotion was ratified and extended by the Assistant Secretary of the Navy. A.R. IV, p. 12. On April 26, 1999, his name was removed from the promotion list. A.R. IV, p. 2. On March 1, 2001, he was released from active duty after twice being passed-over for promotion.

On May 16, 2000, Lt. Barnes submitted an Application for Correction of Naval Records which asserted in part that his promotion occurred as a matter of law because of improper delay. S.A.R., Tabs 1 & 2. On January 11, 2001, the Board for Correction of Navy Records determined Lt. Barnes had not been promoted as a matter of law. S.A.R., Tab 6. On December 19, 2001, upon consideration of equitable factors, the Board again rejected his application. 2nd S.A.R., pp. 2–3.

## Legal principles

As "decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments," *Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973), the substance of decisions such as whether or not a particular officer should be promoted, "is frequently beyond the institutional competence of courts to review." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed.Cir. 2002), citing *Voge v. United States*, 844 F.2d 776, 780 (Fed.Cir.1988). In *Voge* the court stressed that "[j]udicial deference must be 'at its apogee' in matters pertaining to the military and national defense." 844 F.2d at 779, citing *Rostker v. Goldberg*, 453 U.S. 57, 70, 101 S.Ct. 2646, 2654–55, 69 L.Ed.2d 478 (1981). See also *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed.Cir.1995)("the merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review.").

As the Federal Circuit recently observed, courts are reluctant to intervene in the merits of promotion decisions because of:

the court's incurable lack of knowledge of the total grist which the boards sift, [and] also . . . a preference not to meddle with

President via SECDEF to SECNAV for signature.

the internal workings of the military. The promotion of an officer in the military service is a highly specialized function involving military requirements of the service and the qualifications of the officer in comparison with his contemporaries, plus expertise and judgment possessed only by the military. No court is in a position to resolve and pass upon the highly complicated questions and problems involved in the promotion procedure.

*Richey v. United States,* 322 F.3d 1317, 1327 (Fed.Cir.2003), citing *Porter v. United States,* 163 F.3d 1304, 1316–17 (Fed.Cir.1998). However, "although the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." *Adkins,* 68 F.3d at 1323 (emphasis in original). "A court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion." *Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir.1993).

In *Adkins v. United States,* 68 F.3d 1317 (Fed.Cir.1995), the officer challenged the decision of the Secretary of the Army rejecting the recommendation of the Army Board for Correction of Military Records that certain material be removed from the officer's personnel files. The officer claimed the Secretary improperly considered matters outside the administrative record to which he was denied access and the right to refute in violation of regulations which "assured [the service member] access to all official records that are necessary to an adequate presentation of his/her case." *Adkins* at 1325. The Federal Circuit held that Adkins stated a justiciable claim because military decisions are subject to judicial review for compliance with statutes and regulations.

In cases in which procedural violations are alleged, the test or standards against which this court measures the military's conduct are inherent: they are the applicable statutes and regulations. In such instances, this court does not improperly exercise any discretion reserved for the military; 'it merely determines whether

the procedures were followed by applying the facts to the statutory or regulatory standard.'

*Adkins* at 1323, citing *Murphy v. United States, supra* at 873. The question is whether there are procedural "tests and standards which [courts] can soundly administer within their special field of competence." *Voge v. United States,* 844 F.2d 776, 780 (Fed.Cir. 1988). "'Adjudication of plaintiff's claims requires the district court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct.'" *Adkins,* 68 F.3d at 1323, citing *Watson v. Arkansas Nat'l Guard,* 886 F.2d 1004, 1011 n. 16 (8th Cir.1989). The military is bound by statutes as well as its own regulations. As the Federal Circuit recently articulated:

The military no less than any other organ of the government is bound by statute, and even when granted unfettered discretion by Congress the military must abide by its own procedural regulations should it choose to promulgate them. *See Murphy v. United States,* 993 F.2d 871, 873 (Fed. Cir.1993). A claim of procedural violations may present a justiciable controversy because 'the test or standards against which this court measures the military's actions are inherent; they are the applicable statutes and regulations,' *Adkins,* 68 F.3d at 1323.

*Lindsay v. United States,* 295 F.3d 1252, 1257–58 (Fed.Cir.2002).

Accordingly, the court will apply statutes and regulations to the administrative record. Failure to adhere to those standards is remedied by monetary relief. "If the Court of Federal Claims finds that the Army improperly exercised its authority to retire Adkins, he will be entitled to back pay calculated in accordance with law and reinstatement to the rank of lieutenant colonel from the date of his retirement." *Adkins,* 68 F.3d at 1327.

While both sides rely on numerous cases, *Rolader v. United States,* 42 Fed.Cl. 782 (1999) is the closest to the case *sub judice,* at least according to plaintiff. In *Rolader,* the court concluded the Air Force did not follow its procedures in initiating the removal of

plaintiff's name from the promotion list. Accordingly, because the officer was not removed from the promotion list on the date his promotion delay expired, the court held that Lt. Col. Rolader was promoted by operation of law:

> There being insufficient proof that the Air Force complied with its own regulations in initiating a recommendation of removal, we hold that the delay to plaintiff's promotion expired on June 30, 1993. Because plaintiff's name was not removed from the promotions list before that date, **he was promoted by operation of law.**

42 Fed.Cl. at 787 (emphasis supplied).[9] *See also Voge v. United States,* 844 F.2d 776, 782 (Fed.Cir.1988)("absent a statute or regulation entitling a service member to promotion as a matter of law, the Claims Court [now the Court of Claims] has no authority to entertain this claim [for promotion as a matter of law].").

### Summary of procedural errors alleged

Lt. Barnes alleges there was no statutory basis for the March 17, 1998 delay memorandum and that, alternatively, the period of delay specified therein (until the completion of all related administrative and disciplinary proceedings) expired. He also argues he was not given notification of a delay in his promotion prior to April 1, 1998, the effective date of his promotion. Procedural errors are also alleged in the August 24, 1998 extension of the initial promotion delay and in the removal of his name from the promotion list which he asserts was after the expiration of the delay.

### Validity and expiration of term of promotion delay

Lt. Barnes' promotion was confirmed by the Senate on November 8, 1997, with a projected effective date of April 1, 1998. A memorandum to Lt. Barnes from the Chief of Naval Personnel dated March 17, 1998 (15 days prior to the date on which Lt. Barnes was projected to be promoted) cited his nonjudicial punishment for conduct unbecoming an officer, and informed him that his April 1, 1998 promotion to lieutenant commander was delayed "until all related administrative or disciplinary action is completed." A.R. IV, p. 39. The memorandum also stated he may not be qualified for promotion.

> Subj: DELAY OF YOUR PERMANENT PROMOTION TO LIEUTENANT COMMANDER
>
> Ref: (a) CO NSGA Misawa ltr 1611 Ser NOO/01647 of 19 Dec 97 w/ends
>
> (b) SECNAVINST 1420.1A
>
> 1. Reference (a) reported you received nonjudicial punishment on 24 November 1997 for violation of UCMJ, Article 133, conduct unbecoming an officer. Per reference (b), you may not be qualified for permanent promotion.
>
> 2. Accordingly, you are hereby notified the Chief of Naval Personnel has approved the delay of your 1 April 98 permanent promotion to lieutenant commander until all related administrative or disciplinary action is completed.
>
> 3. You are hereby afforded the opportunity to submit a statement concerning this action prior to ratification by the Secretary of the Navy. Please forward your statement, or written declination to make a statement, via your chain of command, to the Chief of Naval Personnel (PERS 834/82) within fifteen days of receipt of this letter.

The memorandum's header refers to a December 19, 1997 memo from Lt. Barnes' Commanding Officer in Misawa, Japan reporting his November 24, 1997 nonjudicial punishment. In that report his commanding officer recommended Lt. Barnes' promotion not be withheld and that he not be required to show cause for his retention in the Navy.[10]

---

9. Rolader's motion for summary judgment was granted. Following a stipulation, judgment was entered that promoted plaintiff, corrected his military records, awarded him back pay and allowances, and declared that he would receive retired pay commensurate with the grade of colonel beginning March 1, 1999.

10. *The Commanding Officer wrote:*
LT Barnes is on the current selection list for promotion to Lieutenant Commander and is expected to be promoted in approximately June 1998. However, the conduct that resulted in this mast is not the conduct expected of a Lieutenant Commander. Accordingly, per reference (a), I most strongly recommend that his

The nonjudicial proceeding was completed on November 24, 1997, prior to the March 17, 1998 memorandum. Accordingly, as of March 17, 1998, there were no "sworn charges against the officer...received by an officer exercising general court-martial jurisdiction over the officer ...[which] have not been disposed of" under 10 U.S.C. § 624(d)(1)(A)—the first statutory basis for a delay of promotion.

A Show Cause Authority reviewed Lt. Barnes' record and on March 19, 1998, two days after the March 17, 1998 memorandum, determined he should show cause before a Board of Inquiry ("BOI") why he should be retained in the Navy. A.R. IV, pp. 34–35. This notice was emailed to Lt. Barnes on the SS JOHN MCCAIN in the Arabian Gulf. On May 27, 1998, a BOI convened pursuant to SECNAVINST 1920.6A, determined Lt. Barnes had engaged in misconduct, but by a vote of 2 to 1 recommended he be allowed to remain in the Navy. A.R. V, pp. 1–51. The BOI, appointed on May 26, 1998 and meeting on May 27, 1998, did not satisfy the second of the five statutory bases for a promotion delay, the convening of a board of officers to review his record. 10 U.S.C. § 624(d)(1)(C). Even if the March 19, 1998 cause determination could be considered a convening of the board, it was two days after the delay memorandum and could not have satisfied that statutory grounds. *See Stringer v. United States*, 117 Ct.Cl. 30, 90 F.Supp. 375, 379 (1950)(government required to strictly comply with statutory time requirements). Furthermore, the BOI's decision on May 27, 1998 to retain Lt. Barnes was final, thus terminating that administrative procedure.[11] Accordingly, even if the Board proceedings were pending at the time of the March 17, 1998 delay memorandum, those proceedings were completed on May 27, 1998, thus terminating the Navy's self-imposed conditions on the delay.

The government does not point to evidence in the record of an ongoing investigation to determine whether any disciplinary action should be taken against Lt. Barnes, or any pending criminal charges against him, two of the other five types of permissible grounds to delay a promotion under 10 U.S.C. § 624(d).

That leaves the fifth and final grounds statutory grounds for delaying a promotion—cause to believe the officer is unqualified to perform the duties of the higher rank. 10 U.S.C. § 624(d)(2). The government asserts that the statement in the March 17, 1998 memorandum that Lt. Barnes may not be qualified for promotion satisfies the statute. Secondly, the government argues that questions about his qualification for promotion were outstanding—thus extending his promotion delay until such a determination was made.

> To reiterate, subsection 624(d)(2) provides: [u]nder regulations prescribed by the Secretary concerned, the appointment of an officer under this section may also be delayed in any case in which there is cause to believe that the officer is mentally, physically, morally, or professionally unqualified to perform the duties of the grade for which he was selected for promotion.

SECNAVINST 1420.1A, ¶ 23(a) echoes the statutory language but does not add any procedural guidelines: "[p]romotion may be delayed under this instruction if:...(5) There is cause to believe that the officer is mentally, physically, morally, or professionally unqualified." The body of the March 17, 1998 memorandum to Lt. Barnes states that "[p]er reference (b)[the Navy regulation], you may not be qualified for permanent promotion." While posing a question, this query does not answer that question and is not a finding of cause to believe Lt. Barnes was not mentally, physically, morally, or professionally qualified to perform the duties of the higher rank, neither does the memorandum refer to any cause finding. A question about

---

promotion be delayed such that he will be the last to be promoted in his year group. I believe that LT Barnes has the potential to be a strong, positive asset for the Navy. Therefore, I do not recommend that his promotion be withheld, nor do I recommend that he be required to show cause for retention.

A.R. II, p. 15.

11. 10 U.S.C. § 1182(d)(1) provides: "If a board of inquiry determines that the officer has established that he should be retained on active duty, the officer's case is closed."

Lt. Barnes' qualification for permanent promotion is not an administrative or disciplinary action nor a finding of cause to believe he was not qualified.

In addition to the December 19, 1997 report of Lt. Barnes' nonjudicial punishment, the header of the March 17, 1998 memorandum references only one other item, Navy regulation—SECNAVINST 1420.1A- and the government does not contend that Naval regulation contains any procedure for making such a cause determination. Rather, the government takes the position that memorandum's equivocation about Lt. Barnes' qualification for permanent promotion, and the several other record statements about his qualification for promotion, evince a separate administrative consequence of his misconduct that was outstanding prior to the March 17, 1998 delay memorandum, distinct from the nonjudicial punishment and Board of Inquiry proceedings. "The decision to promote an officer after disciplinary action is a natural administrative consequence of officer misconduct encompassed within the meaning of 'all administrative and disciplinary matters.'" Gov't Opposition at p. 27. The government however does not point to any record of such an administrative procedure, or a finding of cause to believe he was not qualified for his promotion, the latter being necessary to validate the March 17, 1998 delay and the former necessary to extend any such delay until completion of such a proceeding.

Clearly the Navy was not unfamiliar with a cause determination. Two days after the March 17, 1998 delay memorandum, the Show Cause Authority found cause to question Lt. Barnes' retention in the Navy. Lt. Barnes was required and did show cause why he should be retained in the Navy before a Board of Inquiry. "Cause" to believe he was mentally, physically, morally, or professionally unqualified to perform the duties of the

higher rank is a different issue. Citing MIL-PERSMAN 3410100.2.b.(2), the government argues that an administrative decision had to be made about whether or not Lt. Barnes' misconduct warranted a promotion delay or removal from the promotion list.[12] The administrative record cited by the government is as follows. On December 19, 1997, pursuant to requirements of the Military Personnel Manual ("MILPERSMAN") 3410100,[13] Lt. Barnes' Commanding Officer at Misawa, Japan sent a report of his non-judicial punishment to the Bureau of Naval Personnel as required by MILPERSMAN 1611–010(3). The letter report included his Commanding Officer's recommendation that he should be the last in his group to be promoted, but that his promotion not be withheld and he not be required to show cause why he should be retained. Lt. Barnes responded in a "First Endorsement" that emphasized his otherwise stellar Naval career and urged that his promotion not be delayed as recommended by his Commanding Officer. A.R. II., pp. 13–14. A Second Endorsement dated January 6, 1998 from his Commanding Officer forwarded the package. On February 4, 1998, the Commander, Naval Security Group Command, in Fort Meade, Maryland recommended to the Chief of Naval Personnel that Lt. Barnes be removed from the promotion list and required to show cause for retention in the Navy (the Third Endorsement). A.R. II, p. 11. This recommendation does not equate to a determination that there was cause to believe that Lt. Barnes was mentally, physically, morally, or professionally unqualified to perform the duties of the rank of Commander. Subsequently, on March 19, 1998, the Chief of Naval Personnel, in response to the December 19, 1997 letter, informed Lt. Barnes that a Show Cause Authority reviewed his case and determined there was "sufficient evidence of record to

---

12. Although the government posits this argument in support of its assertion that there was an administrative proceeding pending as of August 24, 1998 which would validate the extension of the March 17, 1998 delay, the court also determines whether it supplies the necessary statutory grounds for the March 17, 1998 delay.

13. MILPERSMAN 3410100 is now located at section 1611–010. The parties did not provide

the court with the prior version. The court presumes there is no substantive difference between the two. Here, the report of non-judicial punishment was forwarded through the chain of command to the Chief of Naval Personnel who responded with the administrative show cause proceedings concerning Lt. Barnes' retention in the Navy, not a show cause proceeding as to his qualification for promotion.

require you to show cause for retention in the Naval Service." A.R. II, pp. 5–6. While there was a show cause finding for retention, there was no show cause finding for fitness for promotion.

The government also cites to a February 19, 1998 memorandum from Lt. Commander R.C. Jensen, Acting Director of the Officer Performance Division to Commander Ann C. Stewart, the Director of Officer Promotions objecting to Lt. Barnes' promotion and noting in conclusory fashion that all administrative action in his case was not completed. A.R. VIII, p. 4. A superior officer's recommendation that Lt. Barnes be removed from the promotion list, and a conclusory statement by another superior officer that administrative action had not been completed as of February 19, 1998, do not satisfy the requirements of subsection (d)(2). The record's question about fitness for promotion cannot be elevated to statutory "cause." Assuming the March 17, 1998 query about his qualification could be construed as a finding of cause to believe he was not qualified for promotion, one of the five statutory bases for delay of promotion, the Navy expressly conditioned the term of that delay "until all related administrative or disciplinary action is completed." There was no administrative or disciplinary action other than the non-judicial punishment which was completed before March 17, 1998, and the subsequent Board of Inquiry Proceeding which was completed on May 27, 1998, thus any period of delay terminated.

Moreover, under the government's reasoning, "cause" here was an extension of the nonjudicial proceedings and the Board of Inquiry. The court disagrees. "Cause" under subsection (d)(2) is a separate and additional statutory grounds for the delay. "[T]he appointment of an officer may **also** be delayed" if there is cause to believe that officer is not qualified for the promotion. The word "also" means something. Recharacterization of the other four statutory grounds for delay does not create a new statutory basis, at least without a separate administrative or disci-

plinary proceeding. The government's citations to the administrative record do not support its conclusion that any administrative or disciplinary action to determine such "cause" was either initiated, such as to validate the March 17, 1998 memorandum, or existed yet was uncompleted, to extend the promotion delay under the Navy's self-imposed terms. RCFC 56.1.

The court concludes that (1) there was no finding of cause to believe that Lt. Barnes was mentally, physically, morally, or professionally unqualified to perform the duties of the higher rank which could justify the delay in the first instance; and alternatively, (2) there was no ongoing related administrative or disciplinary proceedings concerning cause, the temporal parameters of the delay of Lt. Barnes promotion.[14] The court finds that none of the five conditions for promotion delay in 10 U.S.C. § 624(d)(1) or 624(d)(2) existed as of March 17, 1998. As a result, subsection 624(a)(2) mandates that the officer "shall" be promoted. *See* generally *Scarborough v. Principi,* 319 F.3d 1346, 1349 (Fed.Cir.2003)(applying as mandatory the "shall" requirement that attorney fee applications under the Equal Access of Justice Act be submitted within thirty days). *See also Allegheny Ludlum Corp. v. United States,* 287 F.3d 1365, 1376 (Fed.Cir.2002)(applying as mandatory statutory "shall"). The court also finds that all administrative or disciplinary action related to Lt. Barnes' nonjudicial punishment were completed on May 27, 1998, thus terminating the period of any promotion delay under the Navy's terms. The provisions of the statute and the terms of the Navy's delay having expired, Lt. Barnes was promoted by operation of law under subsection 624(a)(2).

The court is not impinging on military discretion on the merits of the decision to remove Lt. Barnes' name from the Senate-approved promotion list. Rather, the court is following statutory mandates, that like regulations, limit the government's discretion. The court is not ordering the pro-

14. Because of other statutory and regulatory errors, the court does not address whether subsection 624(d)(2) or due process would require the existence of regulations governing determination of cause to believe the officer is not mentally, physically, morally or professionally qualified for the promotion as a condition precedent to a delay of promotion under subsection 624(d)(2).

motion, but recognizing that the promotion occurred. *Law v. United States*, 11 F.3d 1061, 1065 (Fed.Cir.1993).

### Ratification by Secretary of Navy

Although not raised by plaintiff, the March 17, 1998 purported delay of Lt. Barnes' promotion was not ratified until August 24, 1998 by Bernard Rostker, Assistant Secretary of the Navy (Manpower and Reserve Affairs). Navy regulation requires a delay of promotion be ratified by the Secretary of the Navy "as soon as practicable."

**23. Delay of Promotion**

**a. Criteria for Promotion Delay.** CHNAVPERS or CMC, as appropriate, or a member's commanding officer, may delay the appointment of an officer selected for promotion. If the appointment is delayed, **the delaying officer shall, as soon as practicable, forward the information required by paragraph 23b to SECNAV for ratification.** Promotion may be delayed under this instruction if:

. . .

**b. Command Requests for Delay**

(1) Commanding officers who consider delay of an officer's promotion warranted and delay an officer's promotion, shall submit justification for the delay to SECNAV via, CHNAVPERS (NMPC–82)(copy to COMNAVMILPERSCOM (NMPC–22)), or CMC (MMPR–1) as appropriate, within 10 days of knowledge of the circumstances warranting the delay, or as soon thereafter as practicable.

(2) Each justification for delay to SEC-NAV must include the following documents:

(a) A copy of the notification to the officer and;

(b) A statement by the officer. If the officer declines to make a statement, the officer concerned shall submit a signed statement to that effect;

(c) Supporting rationale for delay from the officer's commanding officer based on his or her knowledge of the officer involved; and

(d) A recommendation by CHNAVPERS or DC/s (M & RA), as appropriate.

SECNAV INSTRUCTION 1420.1A, ¶ 23.

The government would be hard-pressed to argue that it was not practicable to obtain ratification in less than five months; however, because of the court's findings as to other procedural deficiencies in the delay of Lt. Barnes' promotion, the court does not reach this issue. The court notes however, that in the case of Commander Robinson, BCNR No. 11165–90 (Oct. 30, 1990) discussed *infra*, relief was granted by the Board of Correction of Naval Records where the Secretary of the Navy had not approved of his promotion delay prior to his original promotion date. Here, the effective date of Lt. Barnes promotion was April 1, 1998. The Assistant Secretary of the Navy did not ratify the delay until August 24, 1998.

> The Board finds, as it did in the prior cases at enclosures (8) and (9), that 10 U.S.C. 624(a)(2) ... requires that an officer's promotion be effected when due unless it is properly delayed. Since *no* Secretarial authority for the delay in Petitioner's case had been obtained when 1 June 1983 arrived, the Board concludes that his promotion *should* have been effected on that date, but was not. The Board does not accept Petitioner's proposition that the promotion took effect on that date by operation of law; however, the Board does find his record should be corrected to show the Secretary, acting for the President, appointed him to the grade of commander on that date.[15]

S.A.R., Tab 2, unnumbered 56, emphasis in original.

### D. Immediate notification

Lt. Barnes also argues that the March 17, 1998 memorandum was not delivered to him before April 1, 1998, the effective date of his appointment as required by 10 U.S.C. § 624(d), and it was not "impracticable" to do so, the only exception to the statutory re-

---

**15.** Semantics aside, the result is the same, absent Secretarial approval of his promotion delay, Robinson was promoted—whether titled a pro-

motion as a matter of law or a promotion that should have been effected.

quirement that notice be given prior to the effective date. The government counters that Lt. Barnes, who was based in Misawa, Japan, was attached to USS JOHN S. MCCAIN, which was at sea patrolling the Arabian Gulf at the time, so it was "impracticable" to deliver the March 17, 1998 memorandum to him immediately. The March 17, 1998 memorandum was sent to plaintiff's Commanding Officer at Misawa, Japan. On April 9, 1998, the Executive Officer at Misawa, Japan notified the Chief of Naval Personnel who authored the memorandum that Lt. Barnes was out to sea but would be returned to Misawa as soon as possible. The Executive Officer did not want the letter mailed to Lt. Barnes because it may not have arrived until after he had already departed from the ship. The letter was given to Lt. Barnes on April 21, 1998 following his return to the base in Misawa, Japan.

Lt. Barnes was not given the March 17, 1998 notice until he returned from sea on April 21, 1998, which is too late plaintiff argues. Plaintiff also asserts that the Navy knew about the November 24, 1997 nonjudicial punishment cited in the March 17, 1998 memorandum as reason for the delay and could have given Lt. Barnes notice earlier. The government defends the delay, asserting it was not practical to get the delay notice to plaintiff on the ship and it would have been improper and disrespectful for the Navy to inform him in that manner; therefore, under the circumstances, calling plaintiff back to Japan and giving him the notice in person was reasonable. The government also argues that the statute only requires notice of the grounds for the delay, not notice of the delay itself. As plaintiff already was aware of the prior proceedings according to the government, any delay in getting the memorandum to him was inconsequential.

10 U.S.C. § 624(d)(3) requires notice of a promotion delay before the effective date of appointment, here April 1, 1998, unless "it is impracticable." "Impracticable" is defined as: "[i]mpossible to do or carry out." *The American Heritage Dictionary*, 3rd ed.1992 at p. 908. It was not impossible to notify Lt. Barnes. The record indicates that on March 19, 1998, two days after the date of the

March 17, 1998 memorandum, Lt. Barnes was informed via email that a Board of Inquiry was to be convened to consider his retention in the Navy. Clearly communication via email was possible. However, because of the court's rulings herein, and because determining when giving notice was practical in the military may impinge more on merits and timing decisions vice procedural determinations, it is not necessary to resolve this issue.

**Ratification and extension of initial delay**

On August 14, 1998, Rear Admiral Schmidt, Deputy Chief of Naval Personnel, communicated to the Secretary of the Navy, seeking ratification and extension of the delay of Lt. Barnes promotion "...until all related administrative actions are completed." A.R. IV, p. 12. The request was approved on August 24, 1998 by Assistant Secretary of the Navy Bernard Rostker. *Id.* Reference was made to the non-judicial punishment of October 15, 1997, the March 17, 1998 delay memorandum, and the Board of Inquiry's decision to retain Lt. Barnes.

Plaintiff argues that this August 24, 1998 attempt at further delay (assuming one gets beyond the validity and expiration of the March 17, 1998 delay memorandum) was defective because: (1) the letter failed to give a supporting rationale as required by Paragraph 23(d) of the regulation; (2) any further delay had to be approved by the Secretary of the Navy under Paragraph 23(d) of the regulation, and Assistant Secretary Rostker lacked authority to extend the delay; (3) no temporal "period" of delay required by statute and Paragraph 23(d) was specified; and (4) Lt. Barnes was not notified that the delay was being extended, nor afforded an opportunity to respond as required by both statute and regulation. Therefore, the extension of delay being ineffective, Secretary Danzig's subsequent removal of his name from the promotion list (discussed hereinafter) was ineffective as plaintiff had already been promoted by operation of law.

A promotion may not be delayed more than six months from the original effective promotion date unless the Secretary specifies a further period of delay. 10 U.S.C. § 624(d)(4)("An appointment of an officer may not be delayed under this subsection for

more than six months after the date on which the officer would otherwise have been appointed unless the Secretary concerned specifies a further period of delay."). Navy regulations also contain the six month maximum unless a further "period of delay" is specified. Paragraph 23(d) of SECNAVINST 1420.1A provides:

> d. **Limitations on Delay.** The promotion of an officer may not be delayed under this paragraph for more than six months after the date on which the officer would otherwise have been promoted, unless SECNAV specifies **a further period of delay.** The CHNAVPERS or CMC will submit timely requests, with supporting rationale, for any extension of delay of promotion. An officer's promotion may not be delayed more than 90 days after final action has been taken in any criminal case against the officer in a Federal or state court, more than 90 days after final action has been taken in any court-martial against the officer, or more than 18 months after the date on which the officer would otherwise have been promoted, whichever is later.

(emphasis added).

August 14, 1998 is less than six months from April 1, 1998, the effective date of promotion; accordingly, the request for extension was not untimely. The request for ratification and extension was by the Chief of Naval Personnel to the Secretary of the Navy in compliance with the regulation. The next inquiry is whether a further "period of delay" as required by both the statute and the regulation was specified? Plaintiff argues a period of time must be in calendar increments. The government disagrees, asserting that the request for an extension "until all related administrative actions are completed" properly defined a specified period of delay. "Period" is defined in the American Heritage Dictionary (3rd Ed.1996) in part as "an interval of time characterized by the occurrence of a certain condition, event or phenomenon: *a period of economic prosperity.*" The court finds that as long as other time constraints of the statute are met, the specification of a period of delay by reference to events such as the completion of administrative and other procedures was not improper.

The ratification and extension of the delay was approved by Bernard Rostker as Assistant Secretary of the Navy for Manpower and Reserve Affairs. Lt. Barnes argues that Assistant Secretary Rostker lacked express authority to extend the delay and that the Secretary's authority is non-delegable, citing *In re Robinson,* BCNR No. 11165–90 (October 30, 1990). *Robinson* cited a JAG advisory opinion in a previous case that the Secretary's power to delay a promotion was not-delegable. The JAG opinion that was submitted to the Board for Correction of Naval Records in Lt. Barnes' case corrected that earlier opinion and opined that in this instance, Assistant Secretary Rostker had appropriate authority to extend Lt. Barnes' promotion delay.

The court concludes that if the delay had been effective and/or had not expired of its own terms, Assistant Secretary Rostker had authority to act on behalf of the Secretary to ratify and extend the promotion delay. Assistant Secretary Rostker's principal duty was the supervision of Naval manpower affairs. 10 U.S.C. § 5016. He had authority to act for the Secretary in personnel matters. 32 C.F.R. § 700.203(e)(1998)("The Assistant Secretary of the Navy [Manpower, Reserve Affairs and Logistics] is responsible for the overall supervision of manpower and reserve component affairs of the Department of the Navy"); 32 C.F.R. § 700.203(b)(1998)("The Civilian Executive Assistants [defined in Section 700.203(a) as including the Assistant Secretaries of the Navy] are authorized and directed to act for the Secretary within their assigned areas of responsibility"); SECNAVINST 1420.1A, ¶ 26(a)(the Assistant Secretary of the Navy is responsible for the "management oversight of the Promotion" systems); SECNAVINST 5430.7L5(c)(the Assistant Secretaries are "authorized and directed to act for the Secretary of the Navy throughout the Department of the Navy within his assigned area of responsibility" and are responsible for the overall supervision of the manpower and military personnel affairs). The court agrees with the government that the delay of

an officer's promotion falls within the realm of administration of manpower and reserve affairs. Assistant Secretary Rostker had authority to ratify and extend the delay of Lt. Barnes' promotion assuming the initial delay had complied with procedural requirements.

The court rejects plaintiff's argument that his delay could not be longer than 90 days from the December 12, 1997 report of his nonjudicial punishment. Subsection 624(d)(4) limits delay to no more than 90 days following completion of court-martial proceedings or a criminal case, or more than 18 months after the date the original date of the officer's promotion—here April 1, 1998. The purported extension of August 14, 1998, less than 18 months thereafter, was not untimely.

Plaintiff also argues that the August 14, 1998 letter does not contain the supporting rationale required by ¶ 23d, and that the nonjudicial punishment proceedings and the Board of Inquiry were completed and could not serve as "supporting rational" which, must be supplied by the officer's commanding officer and based on his or her knowledge must accompany "[e]ach justification for delay." ¶ 23b(2). The further period of delay cannot be the same as the initial period of delay, plaintiff argues because a "rationale" under ¶ 23(d) must be something new. Finally, plaintiff argues he did not get written notice as required by subsection 624(d)(3)— and it was not impracticable to do so. Lt. Barnes was not given a copy of the August 14, 1998 and August 24, 1998 actions until they were obtained through the Freedom of Information Act.

In response, the government argues the August 14, 1998 memorandum's reference to his non-judicial punishment, and to the March 17, 1998 promotion delay memorandum were sufficient notification because subsection 624(d)(3) only requires notice of the grounds for delay. The government also argues notice applies only to the initial delay, not to any extension.

The court concludes that while subsection 624(d)(3), cited above, provides for written notice of the grounds for delay, not of the delay itself, the officer also has the right to make a written statement in response to the delay action taken. ("An officer whose promotion has been delayed under this subsection shall be afforded an opportunity to make a written statement to the Secretary concerned in response to the action taken."). Under the government's interpretation, an officer, aware of prior misconduct would have to be clairvoyant to predict all actions the government could take. In order to read these sections harmoniously, the officer must know about the delay in order for the officer to respond. Lt. Barnes was not "afforded an opportunity to make a written statement to the Secretary concerned in response to the action taken" in the August 14, 1998 memorandum as required by statute. 10 U.S.C. § 624(d)(4).[16] Furthermore, SECNAVINST 1420.1A ¶ 23(b)(2) mandates that "each justification for delay to SECNAV must include . . . [a] copy of the notification to the officer." No notification was given to Lt. Barnes.

**Removal**

On September 8, 1998, the Chief of Naval Personnel, referring to SECNAVINST. 1420.1A, notified Lt. Barnes that his name may be removed from the Fiscal Year 98 Active Lieutenant Commander Line Promotion List. He was afforded an opportunity to submit a statement within ten days. A.R. IV, p. 10. Lt. Barnes submitted favorable statements from his commander and others. On March 22, 1999, Chief of Naval Personnel recommended that his name be removed from the promotion list. A.R. IV, p. 2. That recommendation was approved on April 26, 1999 by Secretary Richard Danzig. A.R. IV, p. 2.

Removal from a promotion list is governed by SECNAVINST ¶ 23(e):

> **e. Removal from the Promotion List.** If during a delay of promotion, it is determined that removal from the promotion list is appropriate, removal action under paragraph 17a may be initiated. Although removal action is contemplated, requests for

---

16. The court also rejects the government's argument that the officer is entitled only to notice of the initial delay. The notice provision of 10 U.S.C. § 624(d)(3) applies to delays "under this subsection"—the entire subsection (d) of Section 624.

delay extensions as provided in paragraph 23d shall be submitted to SECNAV as necessary until the officer's name is removed from the promotion list.

Paragraph 17a provides:

SECNAV may remove the name of any officer from a promotion list to any grade below 0–7. CHNAVPERS or CMC, as appropriate, may submit requests for such action to SEC–NAV.

The government's position is that the name of the officer can be removed from a promotion list at any time prior to appointment. That position conflicts with the above regulatory constraints that removal action be initiated during a period of promotion delay. Even if the promotion was delayed without compliance with statutory procedure, Lt. Barnes cannot be appointed Lt. Commander—only the President can do that, the government argues. Indeed, the government's position in this case is that the President's authority to remove a name from a promotion list is absolute and unaffected by the constraints of the mandatory "shall" of § 624(a)(2).[17]

The court's recognition that Lt. Barnes' promotion was effected does not impact any substantive military promotion decision. Statutory mandates limit military discretion and constrain delays of Senate confirmed promotions. This is consistent with *Law v. United States*, 11 F.3d 1061 (Fed.Cir.1993), relied on by the government, which found compliance with the statutory requirements for delay of a promotion in the Coast Guard. *Law's* analysis of the Coast Guard's compliance with the delay provisions and conclusion that the delays in Lieutenant Law's promotion complied with the statute, is consistent with the analysis applied here, albeit reaching a different conclusion. Distinguishing authority holding that the judiciary is without authority to grant a promotion, the Federal Circuit held that the Court of Federal Claims had jurisdiction to grant relief if the appointment had been effected because of improper delay—if Lt. Law's arguments about improper delay of promotion were meritorious. "That Law's claim fails on the merits does not negate the court's jurisdiction." *Id.*, at 1065. Here the court has found Lt. Barnes arguments about improper delay meritorious.

The court does not promote Lt. Barnes. The Navy's delay accomplished his promotion. The court is not granting Lt. Barnes promotion but only recognizing that it occurred. *Law*, 11 F.3d at 1065. The President and Senate approved and confirmed his promotion effective April 1, 1998. Under the clear language of subsection 624(a)(2), that promotion "shall" occur unless there was compliance with the five delay provisions. Any delay must have complied with applicable statutes and regulations as well as the Navy's determination of the duration of the delay—until all administrative and disciplinary proceedings related to his nonjudicial punishment were completed. The court concludes that the Navy failed to com-

**17.** *McCarthy v. United States*, 7 Cl.Ct. 390 (1985), *rev'd*, 785 F.2d 326 (Fed.Cir. Dec. 26, 1985)(Table), cited by the government as a summary reversal of a finding of promotion as a matter of law due to procedural delays in the promotion delay, is not inconsistent with the court's findings herein. In *McCarthy*, the applicable statute required prompt action to end a promotion delay as soon as the grounds for the delay no longer existed. The court determined that the basis for the delay no longer existed; there was no further need to evaluate the officer's conduct; there was no further grounds to delay the promotion. Accordingly, the failure to promptly end the period of delay was an abuse of discretion. 7 Cl.Ct. at 395. The summary unpublished reversal by the Federal Circuit is of questionable precedence. More importantly, the Federal Circuit's clear pronouncements in *Law*, and others, have guided this court. Finally, in this case the court has applied objectively determinable record facts to statutory and regulatory mandates.

Likewise, *D'Arco v. United States*, 194 Ct.Cl. 811, 441 F.2d 1173, 1175 (1971) relied on by the government for the president's unfettered right to remove a name from a promotion list, did not involve questions of the government's compliance with statutory, regulatory and self-imposed limitations on delay, and is thus distinguishable. *Moore v. United States*, 5 Cl.Ct. 457 (1984), noting recent legislation that limited promotion delays, applied prior law which did not; *Voge v. United States*, 844 F.2d 776, 780 (Fed.Cir.1988) concerned termination of Special Pay to which a physician was otherwise entitled, which while not reviewable on the merits, was subject to review for compliance with procedural constraints. These, as well as the other cases relied on by the government, are inopposite.

ply with these limitations, and therefore, under the statute, Lt. Barnes' promotion was effected. Accordingly, the purported removal of Lt. Barnes name from the promotion list was of no effect. The court finds Lt. Barnes was legally entitled to the promotion and is entitled to the pay that should have accompanied that accomplishment. This result necessarily overturns his release from active duty as he has not been passed over for promotion in his correct rank to which he was promoted.

**Decisions of Board of Correction of Naval Records**

On May 16, 2000, Lt. Barnes submitted an Application for Correction of Naval Records. On May 17, 2000, the court stayed this litigation pending the Board's decision. On January 11, 2001, the Board denied the Application.[18] In his application Lt. Barnes argued that he was promoted as a matter of law and, alternatively, that relief should be granted to correct an error or injustice as had been done in similar cases, particularly *In re Robinson*, BCNR No.11165–90, Oct. 30, 1990. The Board determined that Lt. Barnes was not promoted as a matter of law; equitable arguments were not addressed. On November 26, 2001, the Assistant General Counsel (Manpower and Reserve Affairs) requested the Board "provide a report that addresses whether petitioner is entitled to be promoted in order to correct an error or injustice," because "the [January 11, 2001] decision provides no detailed explanation regarding petitioner's entitlement to purely equitable relief." Second Supp. A.R. at 2–3. On December 4, 2001, the court continued its stay pending the Board's reconsideration. On December 19, 2001, the Board found insufficient evidence of probable material error or injustice. In concluding that equitable relief was not warranted, the Board concluded that Lt. Barnes "came to the Board with unclean hands, noting the misconduct which resulted in the delay of [his] promotion and [his] ultimate removal from the promotion list." Second Supp. A.R. at 2. Distinguishing *Robinson*, the Board noted that relief was granted there not on equitable grounds but

because "*no* Secretarial authority for the delay of [Robinson's] promotion had been obtained when his projected promotion date arrived, his promotion should have been effected on that date in accordance with title 10 of the United States Code, section 624(a)(2)." *Id.*

The standard of review of a decision of a corrections board is whether the decision is arbitrary, capricious, unsupported by substantial evidence or contrary to law. *Chappell v. Wallace*, 462 U.S. 296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983); *Haselrig v. United States*, 333 F.3d 1354, 1356 (Fed. Cir.2003); *Martinez v. United States*, 333 F.3d 1295, 1313–14 (Fed.Cir.2003); *Porter v. United States*, 163 F.3d 1304, 1312 (Fed.Cir. 1998).

Lt. Barnes argues the Board's decisions were arbitrary, capricious, unsupported by substantial evidence and contrary to law because of legal errors discussed above, and because of the Board's invocation of the doctrine of unclean hands. He asserts the Board granted equitable relief to individuals who engaged in much more egregious behavior; to impose a higher standard or eliminate a previous standard without warning would be arbitrary and capricious. Plaintiff cites two previous cases where the Board made legal and equitable determinations inconsistent with those applied to Lt. Barnes. In one (No. 6971–87; July 22, 1987) the Board concluded that the officer's promotion delay had not been approved by the Secretary as required by Navy regulation. Recognizing that his promotion occurred because the Secretary of the Navy had not approved of the promotion delay before the scheduled promotion date (an infirmity in Lt. Barnes' purported delay), the Board concluded that:

> since no legally valid delay had been effected, Title 10 U.S.C. 624(a)(2) made it mandatory that petitioner, who was an officer on a promotion list for his competitive category, be promoted to the next higher grade when additional officers in that grade and competitive category were need-

18. "After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to estab-

lish the existence of probable material error or injustice." S.A.R., Tab 6.

ed.... To avoid a requirement to effect Petitioner's promotion, all that would have been needed would have been to obtain a summary Secretarial review and approval of a delay request before the date the promotion was scheduled. However, since this was not done, the Board finds that Petitioner's promotion should have been effected when scheduled.

Plaintiff's Cross–Motion, App. unnumbered 9.

The Board recommended his promotion be recognized with appropriate record correction despite that fact that following Senate confirmation of his promotion, there was investigation into serious allegations which led to a Board of Inquiry. The Board of Inquiry found insufficient evidence to support the allegations, but concluded that while the officer should be retained in the Navy, he should be removed from the promotion list because of findings that the officer served alcohol, showed pornographic movies to juveniles without their parent's consent and often consumed alcohol to excess at social functions and then carelessly discussed official matters.

In the other case cited by Lt. Barnes (6532–96; August 4, 1998), a Marine sought reinstatement and promotion. Allegations of misconduct involved sexual harassment of and fraternization with an enlisted female Marine and conduct unbecoming an officer. The Board concluded that no action was taken to extend an initial promotion delay beyond six months as required by subsection 624(d)(4); consequently, the officer should have been promoted the following day. Plaintiff's Cross–Motion, App. unnumbered 45.

In *Robinson*, the Board opined that his promotion should have been effected because the Secretary of the Navy had not approved the delay before the promotion's effective date. While not acknowledging the concept of promotion by operation of law, the Board in *Robinson* concluded that the lack of Secretarial approval of a delay prior to the effective date of the promotion was an error and an injustice warranting relief. The Board recognized that under Section 624(a)(2) the promotion occurred absent a delay that complied with statutory and regulatory require-

ments. It is unfortunate that this recognition did not occur here.

The several failures to comply with statute and regulations in the attempt to delay Lt. Barnes' promotion were legal error. "[L]egal error includes the military's 'violation of statute, or regulation, or published mandatory procedure...'" *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed.Cir.1993), citing *Skinner v. United States*, 594 F.2d 824, 830, 219 Ct.Cl. 322 (1979). *See also Muse v. United States*, 21 Cl.Ct. 592, 608 (1990)("the failure of the rating officials to follow their own regulations was legal error."). Alternatively, plaintiff argues the Board's December 2001 decision denying equitable relief was arbitrary and capricious. In the three prior Board cases cited by Lt. Barnes the promotion was effected because of improper delay. In *Robinson*, as in Lt. Barnes' case, there was no Secretarial approval of the officer's delay prior to its projected effective date. In *Robinson*, citing subsection 624(a)(2), the Board found the promotion occurred; in Lt. Barnes' case, the Board found the promotion did not occur. In the other two cases there were irregularities in the delay and the Board found the officers should have been promoted; in Lt. Barnes' case, the Board found the promotion did not occur. "'An agency is obligated to follow precedent, and if it chooses to change, it must explain why.'" *British Steel PLC v. United States*, 127 F.3d 1471, 1475 (Fed.Cir. 1997), *citing M.M & P. Maritime Advancement, Training, Educ. & Safety Program v. Dept. of Commerce*, 729 F.2d 748, 755 (Fed. Cir.1984). The government offered no rationale for the legal distinctions. As for the equitable distinctions, the government asserts that equity always involves weighing of fault and fault was not personal in *Robinson* where the officer was held responsible, not because of any personal involvement, but because he was the commanding officer for a military operation that went terribly awry. In contrast, Lt. Barnes engaged in personal conduct of fraternizing with enlisted subordinates, conduct unbecoming an officer. While that is true, Commander Robinson was found to be personally culpable and personally disciplined. In the other two cases, the

officer's improprieties at least approximated those of Lt. Barnes. Relief was granted in previous cases where hands were at least as dirty as Lt. Barnes. Degree of culpability and unclean hands were never mentioned in the other decisions and the government offered no reason why the doctrine of "unclean hands" was applied to Lt. Barnes and not to the other officers. *See Houston v. United States,* 156 Ct.Cl. 38, 297 F.2d 838, 842 (1962)(the arbitrary and capricious standard is met when an agency acts on "a mere whim or caprice."). However, because of the court's finding that the Board's decision was contrary to law, the court need not address whether Lt. Barnes' case was treated differently and therefore arbitrarily.

**Conclusion**

For the foregoing reasons, plaintiff's motion for judgment on and administrative record is **GRANTED** and the government's motion is **DENIED**. The parties are directed to consult and propose, by agreement if possible, the terms of judgment and file a Joint Status Report by **July 31, 2003.**