# United States Court of Appeals for the Federal Circuit

06-5030, -5036

DANNY T. BARNES,

Plaintiff-Cross Appellant,

v.

UNITED STATES,

Defendant-Appellant.

Eugene R. Fidell, Feldesman Tucker Leifer Fidell LLP, of Washington, DC, argued for plaintiff-cross appellant. With him on the brief was Matthew S. Freedus.

Douglas K. Mickle, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director. Of counsel on the brief was Captain Thomas B. Merritt, Jr., General Litigation Division, Office of the Judge Advocate General, United States Department of the Navy, of Washington, DC. Of counsel was Lt. Cdr. Thomas F. Leary.

Appealed from: United States Court of Federal Claims

Senior Judge James F. Merow

# United States Court of Appeals for the Federal Circuit

06-5030, -5036

DANNY T. BARNES,

Plaintiff-Cross Appellant,

v.

UNITED STATES,

Defendant-Appellant.

_____

DECIDED:  January 4, 2007

_____

Before MICHEL, Chief Judge, LINN and PROST, Circuit Judges.

MICHEL, Chief Judge.

This case concerns a Navy officer who was involuntarily discharged following his second non-selection for promotion, in accordance with 10 U.S.C. § 632(a).  The government appeals from a final judgment of the United States Court of Federal Claims, reinstating Danny T. Barnes as a lieutenant, with back pay.  The trial court ruled on the administrative record that there was an unlawful delay in his promotion while certain misconduct was further evaluated by high Navy officials.  Barnes v. United States, No. 99-883 C (Fed. Cl. Oct. 7, 2005).  Barnes cross-appeals, seeking reversal of Dysart v. United States, 369 F.3d 1303 (Fed. Cir. 2004), which precluded him from being

promoted to lieutenant commander by operation of law, the relief he initially sought below. We reject the cross-appeal, but conclude that the court erred in finding the first non-selection invalid where, we hold, the Navy adhered to the relevant statutory and regulatory procedures in delaying his promotion and later removing his name from the promotion list. We therefore reverse.

## I.    BACKGROUND

The underlying facts are well-summarized by the two thorough opinions below and will not be set forth in similar detail here. See Barnes v. United States, 66 Fed Cl. 497, 497-98 (Fed. Cl. 2005) ("Barnes II"); Barnes v. United States, 57 Fed. Cl. 204, 208 (Fed. Cl. 2003) ("Barnes I"). Briefly, Barnes enlisted in the Navy on June 20, 1983. He rose through the ranks and was promoted to lieutenant on June 1, 1992. Barnes was selected by a board for promotion to lieutenant commander in the competitive category of special duty officer (cryptology) on April 30, 1997. His nomination was confirmed by the Senate on November 8, 1997.[1] See 143 Cong. Rec. S12214 (daily ed. Nov. 8, 1997) (confirming those nominations received by the Senate and appearing at 143 Cong. Rec. S11390 (daily ed. Oct. 29, 1997)). His promotion never became effective, however, because he was later disciplined for attempting to arrange off-duty liaisons with five enlisted women, two of whom were his subordinates.

Following Barnes' non-judicial punishment proceedings concerning that misconduct, a formal objection to his promotion was lodged by a lieutenant commander in the Performance Division of the Navy on February 19, 1998. Barnes subsequently

---

[1] In fact, Barnes received pay at the higher rank for one year starting on April 1, 1998, his projected promotion date, but was later asked to pay back the difference of approximately $2,500.

received notice that his promotion was delayed "until all related administrative or disciplinary action is completed." Although that notice letter was dated March 17, 1998, Barnes was aboard the USS John S. McCain in the Persian Gulf at the time; thus, he did not receive it until April 21, 1998, when he returned to his base at Misawa, Japan.[2] He responded promptly on April 25, 1998, enclosing four character references. On May 1, 1998, Barnes' commanding officer in Japan supported his promotion to lieutenant commander, but recommended that his promotion be delayed such that he would be the last in his year group to be promoted.

Meanwhile, on March 19, 1998, Barnes was directed to show cause why he should be allowed to remain in the Navy, on the basis of the same misconduct. On May 26, 1998, a Board of Inquiry ("BOI") was appointed. On May 27, 1998, the BOI unanimously found that Barnes had engaged in conduct unbecoming an officer, failed to demonstrate acceptable qualities of leadership, and failed to conform to prescribed standards of military deportment; nonetheless, by a vote of 2 to 1, it recommended retaining him in the Navy.

Ratification and extension of the initial delay in Barnes' promotion to lieutenant commander was requested by the Bureau of Naval Personnel on August 14, 1998 and approved by the Assistant Secretary of the Navy on August 24, 1998. On September 8, 1998, Barnes was notified that the Secretary of the Navy was considering the removal of his name from the promotion list. He responded by letters dated September 24, 1998 and November 3, 1998. In addition, his commanding officer wrote two letters of endorsement, dated October 2, 1998 and November 18, 1998. A memorandum

---

[2]    Barnes, however, acknowledges receiving email notification of his promotion delay on April 15, 1998.

addressed to the Special Assistant Congressional Liaison Office, dated December 14, 1998, indicated that Barnes' suitability for promotion was still being reviewed by the chain of command. On March 22, 1999, the Chief of Naval Personnel determined that Barnes was not qualified for promotion to lieutenant commander and requested removal of his name from the promotion list; the Secretary of the Navy approved on April 26, 1999, and Barnes was notified on May 7, 1999. The removal of his name was deemed a non-selection for promotion pursuant to 10 U.S.C. § 629(c)(2). Subsequently, he was again considered for promotion by the next selection board. Following Barnes' second non-selection for promotion, he was involuntarily discharged, pursuant to 10 U.S.C. § 632(a), on March 1, 2001.

Barnes subsequently accepted a reserve commission as a lieutenant in the Independent Ready Reserves and received $72,107.28 in separation pay. On July 15, 2003, he tendered his resignation to the Naval Reserve Personnel Center, which ended his obligation to the United States Navy. The Navy accepted his resignation by letter dated July 29, 2003, and Barnes was honorably discharged from the United States Naval Reserve, effective July 17, 2003.

*     *     *

On October 21, 1999, Barnes filed suit in the Court of Federal Claims. He alleged that the delay in his promotion and the ultimate removal of his name from the promotion list were not in accordance with statutory and regulatory procedures. Barnes I, 57 Fed. Cl. at 205. He further contended that the failure of the Navy Board for Correction of Military Records ("BCNR") to grant him relief was contrary to law or

arbitrary and capricious.[3]  Id.  In ruling on cross-motions for judgment on the administrative record, the court agreed with Barnes that there had been various procedural violations such that the delay was improper and had no effect on his promotion; in other words, the court below ruled that Barnes had been promoted by operation of law under 10 U.S.C. § 624(a)(2).  Id. at 218-19.  Having ruled that the BCNR's denial of relief was thus contrary to law, the court declined to reach the issue of whether its reliance on the unclean hands doctrine was arbitrary and capricious.  Id. at 221.

This decision was revisited in the wake of Dysart, which held that 10 U.S.C. § 624 "does not provide for automatic appointment without action by the President." 369 F.3d at 1313.  Barnes conceded that his first three causes of action, seeking promotion to lieutenant commander by operation of law,[4] had to be dismissed in light of Dysart.  Barnes II, 66 Fed. Cl. at 499.  His alternative argument—that he was unlawfully dismissed because his deemed non-selection was based on an improper removal of his name from the promotion list—remained to be considered.  Id. at 499, 503.  The court again agreed with Barnes that the Navy failed to follow its regulations in removing his name from the promotion list, rendering the first non-selection invalid.  Id. at 503-05.

_____

[3]  Barnes filed his Application for Correction of Naval Records on May 16, 2000.  At his request, the Court of Federal Claims stayed this litigation pending the BCNR's decision.  It denied relief on January 11, 2001 and denied reconsideration on December 19, 2001.  See Barnes II, 66 Fed. Cl. at 498.

[4]  Barnes' first cause of action alleged procedural error when he was not notified of his promotion delay until after its effective date, in violation of 10 U.S.C. § 624(d)(3) and SECNAVINST 1420.1A ¶ 23c.  His second cause of action alleged that the delay in his promotion expired on May 27, 1998.  His third cause of action alleged that he was not provided notice, as required by § 624(d)(3), of new grounds for delay in August 1998.  See Barnes II, 66 Fed. Cl. at 499 n.2.

06-5030, -5036                              5

The court incorporated by reference its analysis from the earlier decision and reasoned that, "[a]bsent a valid 'first' deemed non-selection, there was no 'second' failure of selection" to justify his involuntary discharge, as required under 10 U.S.C. § 632(a). Id. at 505.

Applying the constructive service doctrine, the trial court concluded that Barnes was entitled to back pay and benefits retroactive to when he was improperly separated in 2001. Id. at 505-06. In addition, with constructive credit, Barnes reached twenty years of active service and became eligible to retire in February 2006. The court expressly rejected the government's argument that Barnes had waived his right to reinstatement when he resigned from the Naval Reserves. Id. at 506-07. The Navy was ordered to reinstate Barnes with back pay. Id. at 508. Judgment was entered accordingly. No actions were taken by the Navy during the pendency of this appeal.

Timely notices of appeal and cross-appeal followed on December 2, 2005 and December 15, 2005, respectively. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II.  DISCUSSION

### A

A decision granting or denying a motion for judgment upon the administrative record is reviewed without deference. We apply the same standard of review as the United States Court of Federal Claims, which means "we will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005). The trial court's legal conclusions will not be reversed unless incorrect as a

matter of law, and its factual findings will not be disturbed unless clearly erroneous. Heisig v. United States, 719 F.2d 1153, 1158 (Fed. Cir. 1983). Statutory or regulatory interpretation, however, is reviewed without deference. Strickland v. United States, 423 F.3d 1335, 1337 (Fed. Cir. 2005).

**B**

As a threshold matter, the government asserts that alleged procedural defects concerning the Navy's decision to remove Barnes' name from the promotion list are not subject to judicial review. This argument was specifically rejected below. Barnes II, 66 Fed. Cl. at 499-503. We agree with the trial court.

It is well-established that although the merits of military promotion decisions are nonjusticiable, "a challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy." Adkins v. United States, 68 F.3d 1317, 1323 (Fed. Cir. 1995). Indeed, Dysart itself recognized that courts can evaluate whether the military follows the procedures mandated by statute or by its own regulations when making promotion decisions. See 369 F.3d at 1315; see also Lewis v. United States, 458 F.3d 1372, 1377 (Fed. Cir. 2006) (observing that courts can review promotion decisions for violations of the Constitution, statutes, or regulations). As this is the precise nature of Barnes' challenge, it is properly before us.

**C**

On the merits, the government argues that the Navy complied with all relevant statutory and regulatory procedures. We agree that the court erred in finding otherwise.

Under the relevant statute and the accompanying Navy regulation, a promotion may be delayed if (A) sworn court-martial charges have been received and such

charges have not been disposed of; (B) an investigation is being conducted to determine whether disciplinary action of any kind should be brought against the officer; (C) a board of officers has been convened to review the record of the officer; or (D) a criminal proceeding in a federal or state court is pending against the officer. 10 U.S.C. § 624(d)(1);[5] SECNAVINST 1420.1A ¶ 23a. A promotion may also be delayed if there is cause to believe that the officer is "mentally, physically, morally, or professionally unqualified to perform the duties of the grade for which he was selected for promotion." 10 U.S.C. § 624(d)(2); see also SECNAVINST 1420.1A ¶ 23a. In any event, notice of the grounds for the delay must be given, "unless it is impracticable to give such written notice before the effective date of the appointment, in which case such written notice shall be given as soon as practicable," so the officer will have an opportunity to submit a written statement in response to the Secretary of the Navy. 10 U.S.C. § 624(d)(3); see also SECNAVINST 1420.1A ¶ 23c. Moreover, the delay may not last "for more than six months after the date on which the officer would otherwise have been appointed unless the Secretary concerned specifies a further period of delay," and even then, no more than 18 months after the officer would otherwise have been appointed. 10 U.S.C. § 624(d)(4); see also SECNAVINST 1420.1A ¶ 23d.

Here, the court agreed with Barnes that the delay in his promotion was not supported by any of the grounds listed in § 624(d) and ¶ 23a. Yet, the March 17, 1998 notice stated that the reason for the delay in Barnes' promotion was his conduct unbecoming an officer, for which he had received non-judicial punishment in a

---

[5] This statutory provision was later amended on October 17, 2006, see P.L. 109-364, 120 Stat. 2181, 2183, to include another subparagraph: "(E) substantiated adverse information about the officer that is material to the decision to appoint the officer is under review by the Secretary of Defense or the Secretary concerned."

proceeding that was completed on November 24, 1997. It expressly referenced SECNAVINST 1420.1A and observed "you may not be qualified for permanent promotion." In other words, the proffered reason for the delay was the catch-all provision of § 624(d)(2). The memorandum clearly implies that Barnes' attempted fraternization with female subordinates was cause to believe he was not qualified to be promoted. The court therefore erred by interpreting this statement as merely "posing a question" and "not a finding of cause to believe Barnes was not mentally, physically, morally, or professionally qualified to perform the duties of the higher rank." Barnes I, 57 Fed. Cl. at 211. Further, the court improperly concluded that a separate order to show cause on fitness for promotion was required. The statute merely contemplates giving notice to the officer of the grounds for the delay; it does not suggest any requirement to provide an even earlier notice that one of the statutory grounds for delay may exist. Moreover, contrary to the ruling of the trial court, there is no requirement in the statute or the accompanying regulation for a formal "finding" on fitness before a promotion may be delayed.

The court further found that, even if the delay had been supported by one of the enumerated statutory reasons, it ended by its own terms when "all related administrative or disciplinary action [wa]s completed," which the trial court found was on May 27, 1998. Id. at 213. This was also erroneous. While it is true that Barnes' separation proceedings before the BOI ended on May 27, 1998, the record clearly demonstrates that whether he was suitable for promotion to lieutenant commander was still pending review by his chain of command. Indeed, Barnes himself recognized this to be the case in his letter dated April 1, 1999, wherein he "respectfully request[s] that the Navy drops

the effort to remove [him] from the promotion list, and restore his promotion effective 01 April 1998."

In the alternative, Barnes argues that the Navy failed to comply with the notice requirement by not notifying him of the March 17, 1998 letter before the effective date of his promotion, i.e., April 1, 1998. We disagree. The statute and accompanying regulation expressly provide an exception where notice is "impracticable"; here, Barnes was at sea. Moreover, Barnes did not suffer any prejudice, as he promptly submitted his written response as soon as he returned to Japan. Meanwhile, the Navy neither took action against him nor made any decision to do so. Thus, even if the court had correctly concluded that there was a procedural defect, we hold it was harmless.

With respect to the extension of the delay period beyond six months, we agree with the court that ratification was sought before six months had expired and the total period of delay before Barnes' name was removed was less than eighteen months, in compliance with statutory and regulatory requirements. The trial court, however, found that the failure to notify Barnes that the delay had been extended in August 1998 was a procedural defect, emphasizing that "the officer must know about the delay in order for the officer to respond." Barnes I, 57 Fed. Cl. at 217. Yet, neither § 624(d)(4) nor SECNAVINST 1420.1A ¶ 23d requires a separate notice to be provided if a delay in promotion is extended beyond six months. We are not persuaded by the argument that the notice requirement of § 624(d)(3) and ¶ 23c applies. The government correctly argues that an officer must be notified of the grounds for a delay, not its duration.[6] Here, the underlying reason for delay did not change. Barnes already knew that his

---

[6] As such, we reject Barnes' argument that the August 1998 extension of the delay was procedurally defective for failing to specify the further period of delay.

06-5030, -5036                    10

promotion was being delayed due to his misconduct. He not only had the opportunity to respond but had actually submitted multiple written responses, dated April 25, 1998, September 24, 1998, and November 3, 1998, respectively.

We therefore conclude that there was no procedural error in the delay of Barnes' promotion. As such, we necessarily find that the later removal of his name from the promotion list occurred during a lawful delay period. Thus, the first non-selection was valid, and Barnes was properly discharged following his second non-selection.

In light of this holding, we need not reach the government's alternative argument that Barnes is precluded from seeking reinstatement after Dysart because allowing such a remedy for the alleged procedural errors would encroach upon the President's appointment authority. Nor do we need to decide whether Barnes waived his right to reinstatement when he voluntarily resigned from the Naval Reserves. We further decline to resolve whether the BCNR's denial of relief was otherwise improper, an issue that the trial court never decided in the first instance.

## D

Although he argues that it was wrongly decided, Barnes himself recognizes that this panel is bound to follow Dysart unless and until it is overturned by the court sitting en banc. We therefore do so and reject the cross-appeal. Nor are we persuaded, as requested, to propose en banc review ourselves.

## III.   CONCLUSION

For these reasons, the judgment of the Court of Federal Claims is

REVERSED.