**Henry E. GOSSAGE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 09–414C.

United States Court of Federal Claims.

Jan. 14, 2010.

Henry E. Gossage, Plaintiff, pro se.

Lauren S. Moore, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER

BRADEN, Judge.

### I. RELEVANT FACTUAL BACK-GROUND.[1]

On June 21, 1971, Plaintiff enlisted in the United States Army, for a three-year service

---

1. The facts cited herein were derived from the June 24, 2009 Complaint ("Compl.") and Exhib-

term in the military occupational specialty of Air Defense Radar Mechanic. AR 41, 143–44. Plaintiff served three years on active duty in the Army, achieving the Grade of E–5, and "his conduct and efficiency were rated as excellent." AR 5, 46, 57–61. On March 19, 1974, while on active duty, Plaintiff's wisdom teeth were removed, and the Clinical Record noted that Plaintiff was currently "being treated by Dermatology for psoriasis."[2] AR 81.

On April 22, 1974, prior to being released from active duty, Plaintiff underwent a complete medical examination as part of the discharge process. AR 82–83. The medical examination confirmed that Plaintiff had psoriasis and had experienced an episode of joint pain for a few hours. AR 82. Although the Report Of Medical Evaluation noted Plaintiff's psoriasis, the examining physician concluded that Plaintiff was "physically qualified for separation." AR 24, 83. Plaintiff was assigned a physical profile rating of 111111.[3] AR 83. A service member "having a numerical designation of '1' under all factors, is considered to possess a high level of medical (physical and mental) fitness and, consequently . . . is medically fit for any military assignment." Army Reg. 40–501 at ¶ 9–3c(1). Plaintiff also completed a medical history form for the medical examination, in which he stated that he was in good health. AR 83.

On June 20, 1974, Plaintiff was honorably discharged, after completing a three-year term of service. AR 41. According to Plaintiff, the "U.S. Army's Physical or Medical Evaluation Board never evaluated or considered [Plaintiff] for medical retirement in 1974," Compl. ¶ 2.9. On that date, Plaintiff also completed a Veterans Administration[4] Application For Compensation Or Pension At Separation From Service. Pl.Ex. D–1. On September 23, 1974, the Veterans Administration ("VA") issued a Rating Decision, that evaluated Plaintiff as having a service-connected, 30 percent disabling condition of psoriasis.[5] AR 26.

On August 18, 1993, the VA increased the service-connected rating for psoriasis from a 30 percent disabling condition to a 50 percent disabling condition. AR 5. An evaluation of 50 percent disabling condition for psoriasis "is granted for ulceration, extensive exfoliation, or crusting with systemic or nervous manifestations, or an exceptionally repugnant condition." AR 27. On November 9, 1994, the VA issued another Rating Decision, granting Plaintiff an additional 20 percent disabling service-connected rating for psoriatic arthritis. AR 5. A 20 percent disabling service condition rating for psoriatic arthritis is assigned when "X-ray evidence shows involvement of two or more major joints or two or more minor joint groups with occasional incapacitating exacerbations." AR 28.

its in Support ("Pl.Ex.A–H"), as well as the September 11, 2009 Administrative Record ("AR").

**2.** "Psoriasis" is "any of a group of common chronic, squamous dermatoses with variable symptoms and courses; some are inherited . . . seen are rounded, circumscribed . . . dry, scaling patches of various sizes, covered by gray, silvery, or white umbilicated, lamellar scales." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (31st ed.2007) at 1570. The most common sites are "extensor surfaces, nails, scalp, genitalia, and the lumbosacral region." *Id.*

**3.** The Physical Profile Rating or "PUHLES," assigns a numeric value ranging from one to four to the service member's health in the following categories: physical capacity or stamina, upper extremities, lower extremities, hearing and ear, eyes, and psychiatric. Army Regulation ("Army Reg.") 40–501, Standards of Medical Fitness, December 1960 (rev. August 10, 1971), ¶ 9–3b.

**4.** The Veterans Administration is now the United States Department of Veterans Affairs, after it was established as a Cabinet-level position on March 15, 1989. http://www4.va.gov/about_va/vahistory.asp (last visited January 11, 2010).

**5.** Sections 1110 and 1130 of Chapter 38 of the United States Code permit the VA to award compensation for disabilities that incurred during or were aggravated by military service. 38 U.S.C. §§ 1110, 1130. Congress established the VA Schedule for Rating Disabilities as the standard under which percentage rating decisions are to be made for disabled military personnel. AR 6. Percentage ratings represent the average loss in earning capacity for the disabled military personnel in civil occupations resulting from diseases and injury, and the residual effects of these health impairments on civilian occupations. *Id.*

On January 8, 1998, the VA continued the 50 percent disabling service-connected rating for psoriasis and the 20 percent disabling service-connected rating for psoriatic arthritis. AR 27. The VA records show that "[Plaintiff] still has wide spread [sic], active psoriasis which appears to be poorly controlled even with ultraviolet therapy." Id. The VA records also noted that "[i]nflammatory or reactive arthritis is a fairly common complication of psoriasis and usually initially affects the peripheral joints including the hands or feet." AR 28. The VA concluded that the evidence confirming Plaintiff's psoriatic arthritis was "certainly not clear," but assigned a 20 percent evaluation "since the condition is mild without any joint deformity or chronic loss of motion at the present time." Id.

On January 8, 1998, the VA granted Plaintiff entitlement to individual unemployability, because "the claimant is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities" and there "is a reasonable linkage between his inability to find employment in the past several years and service-connected psoriasis."[6] AR 28–29. In addition, Plaintiff was granted Dependents' Educational Assistance, effective June 6, 1995, because the evidence showed Plaintiff "currently has a total service-connected disability, permanent in nature."[7] AR 29.

## II. PROCEDURAL HISTORY.

### A. Before The Army Board For The Correction Of Military Records.

On August 5, 2005, Plaintiff applied to the Army Board for the Correction of Military Records ("ABCMR"), alleging that he "should have been granted a Military Medical Retirement based upon service connected disabilities incurred while on active duty . . . instead of an Honorable Discharge." AR 11; see also Compl. ¶ 1.8. Plaintiff claimed that since he acquired psoriasis and the onset of psoriatic arthritis while serving on active

duty, he was not physically qualified for discharge on June 20, 1974. AR 11. Plaintiff explained that the VA had given him a 30 percent disability rating on September 23, 1974, but that the rating had increased to 50 percent disabling in subsequent years. Id. Plaintiff requested that the ABCMR correct his military records by granting him full medical retirement. Id.

On June 29, 2006, the ABCMR denied Plaintiff's application. AR 3–9. As a threshold matter, Plaintiff failed to meet the statute of limitations for filing an application for correction of military records. AR 4. Section 1552(b) of Title 10 of the United States Code provides that applications for corrections of military records must be filed within three years after discovery of the alleged error or injustice. 10 U.S.C. § 1552(b). Plaintiff's application was filed 30 years after he was honorably discharged from the Army and not awarded retirement benefits. AR 11. Section 1552(b), however, also allows the ABCMR to excuse failure to meet the three-year statute of limitations, if it determines that "it would be in the interest of justice" to do so. 10 U.S.C. § 1552(b). In this case, the ABCMR concluded that Plaintiff did not provide "a compelling explanation or evidence to show that it would be in the interest of justice to excuse failure to timely file in this case." AR 4, 8.

The ABCMR also determined that there was "no evidence in [Plaintiff's] official record to show he had an unfitting condition due to psoriasis." AR 7. At the time of Plaintiff's separation, he had a physical profile of 111111, was in good health, and had not been referred to a medical evaluation board for any disqualifying medical condition, all of which created a presumption of fitness. Id. In addition, "[n]otwithstanding the presence of psoriasis, or possible presence of various medical conditions, there was no evidence of record, nor has [Plaintiff] provided sufficient evidence, which would indicate that he suffered from any medical condition of such

---

6. The effective date of the grant was June 6, 1995, the date Plaintiff was released from prison following a felony conviction. AR 29.

7. Dependents' Educational Assistance is "derived from a veteran who was discharged under other than dishonorable conditions and has a permanent and total service-connected disability." AR 29.

severity that he was rendered unable to reasonably perform the duties of his office, rank, grade or rating." *Id.*

The ABCMR further reasoned that "the fact that the [VA], in its discretion, has awarded service connection for [Plaintiff's] psoriasis ... does not, in itself, establish physical unfitness for Army purposes." *Id.* Since the VA's disability ratings are based on a different set of criteria than the Army's disability ratings, "it is not unusual for the two agencies of the Government, operating under different policies, to arrive at a different disability rating based on the same impairment." AR 6–7. The VA evaluates veterans throughout the individual's lifetime, adjusting the percentage of disability if necessary, in order to compensate individual's for loss of civilian employment. AR 7. Conversely, the Army rates only conditions determined to be physically unfitting at the time of separation, compensating the individual for loss of military career.[8] *Id.*

The ABCMR concluded "that the evidence presented [did] not demonstrate the existence of a probable error or injustice" and that the "overall merits of this case are insufficient as a basis for correction of the records of the individual concerned." AR 9. Thus, "there [was] insufficient basis to waive the statute of limitations for timely filing or for correction of [Plaintiff's] records." *Id.*

### B. Before The United States Court of Federal Claims.

On June 24, 2009, Plaintiff filed a *pro se* Complaint in the United States Court of Federal Claims, appealing the ABCMR's June 29, 2006 denial of medical disability retirement and alleging that the Army erred when it discharged him without disability retirement.[9] Compl. ¶ 3.5.

On August 20, 2009, the Government filed a Motion For Judgment Upon The Adminis-

trative Record And Appendix ("Gov't Mot"), along with the Administrative Record. On September 17, 2009, Plaintiff filed a Response To Defendant's Motion For Judgment And Plaintiff's Cross–Motion For Summary Judgment Upon The Administrative Record ("Pl. Resp. & Cross–Mot."). On October 15, 2009, the Government filed a Response To Plaintiff's Cross–Motion For Judgment Upon The Administrative Record And Reply To Plaintiff's Response To Defendant's Motion For Judgment Upon The Administrative Record ("Gov't Resp. & Reply").

### III. DISCUSSION.

#### A. Jurisdiction.

■ The Tucker Act provides that the United States Court of Federal Claims has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, does not, by itself, confer jurisdiction on the court. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) ("The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists."). Therefore, a plaintiff must identify an independent basis by way of a contract, federal statute, regulation, or the Constitution upon which it is entitled to monetary payment from the federal government. *United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) ("The claim must be one for money damages against the United States and the claimant must demonstrate

---

8. The ABCMR also stated that a "common misconception is that veterans can receive both a military retirement for physical unfitness and a[VA] disability pension." AR 7. The law only allows an individual to be compensated once for a disability, such that, if applicable, the veteran would have to choose between the VA pension and military retirement. *Id.*

9. The Clerk's Office for the United States Court of Federal Claims placed Plaintiff's June 24, 2009 Complaint under seal, because the Exhibits In Support contained Personal Identifiable Information ("PII"). This Memorandum Opinion and Final Order is not placed under seal, however, because it does not contain PII.

that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.") (internal citations omitted); *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.2005) ("In order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages. In the parlance of Tucker Act cases, that source must be money-mandating.") (internal citations and quotations omitted).

■ The June 24, 2009 Complaint invokes the jurisdiction of the United States Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1), as well as 10 U.S.C. §§ 1201–21, 28 U.S.C. § 3346, and 38 U.S.C. § 1155. Compl. ¶ 1.11. The June 24, 2009 Complaint also seeks a correction of Plaintiff's military records under 10 U.S.C. §§ 1552–58. *Id.* In this case, the court has subject matter jurisdiction over the claims of the June 24, 2009 Complaint for disability retirement, pursuant to 10 U.S.C. § 1201, because "[Section] 1201 is understood as money-mandating" and serves as the separate source of substantive law required by the Tucker Act. *Fisher*, 402 F.3d at 1174–75 (holding that 10 U.S.C. § 1201 is "a classic Tucker Act suit for money and the related remedies the [United States Court of Federal Claims] is authorized to grant."); *see also Sawyer v. United States*, 930 F.2d 1577, 1580–81 (Fed.Cir.1991) (holding that claims challenging disability status under 10 U.S.C. § 1201 are within the jurisdiction of the United States Court of Federal Claims).

### B. Standard For Judgment On The Administrative Record, Pursuant To RCFC 52.1.

■ A motion for judgment on the administrative record, pursuant to RCFC 52.1, has no counterpart in the Federal Rules of Civil Procedure. RCFC 52.1, Rules Committee Note (July 13, 2009). Therefore, summary judgment standards are not applicable under RCFC 52.1. *Id.* (adopting the holding in *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed.Cir.2005) ("[T]he judgment on an administrative record is properly un-

derstood as intending to provide for an expedited trial on the record.")); *see also A&D Fire Prot. v. United States*, 72 Fed.Cl. 126, 131 (2006) ("The resolution of RCFC 52.1 cross-motions is akin to an expedited trial on the paper record."). Accordingly, on a motion for judgment on the administrative record, the court is required to determine whether the plaintiff has met the burden of proof to show that the agency's decision was not in accordance with the law. *Bannum*, 404 F.3d at 1357 (instructing the court to make "factual findings under RCFC 52.1 from the [limited] record evidence as if it were conducting a trial on the record"). The existence of a material issue of fact, however, does not prohibit the court from granting a motion for judgment on the administrative record; nor is the court required to conduct an evidentiary proceeding. *Id.; see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original). A plaintiff also must establish a deficiency with "cogent and clearly convincing evidence," overcoming the strong presumption that the Government discharged its duties "correctly, lawfully, and in good faith." *Martinez v. United States*, 77 Fed.Cl. 318, 324 (2007) (internal citations omitted); *see also Wyatt v. United States*, 23 Cl.Ct. 314, 319 (1991) (holding that review of a military correction board's decision is limited to the administrative record before the deciding official or officials).

### C. Pleading Requirements Of A *Pro Se* Plaintiff.

■ In the United States Court of Federal Claims, the pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel. *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers") (internal cita-

tions and quotations omitted). Indeed, it has been the tradition of the court to examine the record "to see if [a *pro se* ] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed.Cir. 1995).

**D. The Government's August 20, 2009 Motion For Judgment Upon The Administrative Record.**

**1. The Parties' Arguments.**

**a. The Government's Argument.**

The Government moves the court for judgment upon the administrative record, because the ABCMR's decision denying Plaintiff's claim for disability retirement pay was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Gov't Mot. at 4. The ABCMR reviewed Plaintiff's application, as well as applicable regulations and law, and "reasonably determined" that Plaintiff failed to demonstrate probable error or injustice, and accordingly denied his application. *Id.* at 7 (citing AR 3–9). Under Army Regulation 635–40, the standard for disability retirement is that the soldier is unfit, because of physical disability, to reasonably perform the duties of his office, grade, rank, or rating, and the "mere presence of an impairment, the ABCMR correctly explained, does not justify the finding of unfitness." *Id.* at 7–8.

In addition, the ABCMR's determination that Plaintiff did not have a medically unfitting disability is supported by substantial evidence. *Id.* at 8. Plaintiff's April 22, 1974 separation physical examination noted the existence of psoriasis, but that alone is not enough to justify a decision of physical unfitness. Army Reg. 40–501, ¶ 3–33(w) (Psoriasis renders a service member unfit for further military service only when it is "excessive and not controllable by treatment"). The examining physician, however, determined that Plaintiff's psoriasis was not sufficient to be classified as medically unfitting,

and assigned Plaintiff a physical profile of 111111. Gov't Mot. at 8 (citing AR 83). The examining physician's opinion should be given deference since he was in the best position to determine Plaintiff's fitness at the time of separation. *Bernard v. United States*, 59 Fed.Cl. 497, 501 (2004) (quoting *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983) ("[R]esponsibility for determining who is fit or unfit to serve in the armed services is not a judicial province . . . courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence.")). Thus, the ABCMR properly relied on the examining medical physician's opinion in concluding that Plaintiff did not have medically unfitting condition at time of separation. Gov't Mot. at 8.

Next, the Government argues that the VA's decision to grant Plaintiff disability benefits does not require the Army to grant disability separation or retirement. *Id.* The ABCMR correctly concluded that the VA and Army apply different standards in making disability determinations, and thus a "disability rating from the VA does not necessarily reflect any error or injustice on the part of the Army." *Id.* at 9. VA disability ratings, although evidence in ABCMR proceedings, are not binding. *Myers v. United States*, 50 Fed.Cl. 674, 690 (2001) ("[W]hile the ABCMR does consider VA disability ratings as relevant evidence during its deliberations, it is not bound by them, and these ratings are in no way ultimately determinative of claims for military disability retirement.") (internal citations and quotations omitted). The Army's disability rating is "intended to compensate an individual for interruption of a military career after it has been determined that the individual suffers from an impairment that disqualifies him or her from further service." Gov't Mot. at 9 (quoting AR 6). Conversely, a VA rating "awards disability ratings to veterans for conditions that it determines were incurred during military service and subsequently affect the individual's civilian employability." *Id.* (quoting AR 6–7).

A member of the armed forces who incurs a disability during active military service is

not entitled to disability retirement unless the disability renders him unfit for military service at the time of separation. 10 U.S.C. § 1201(a) ("Upon a determination by the Secretary concerned that a member described in subsection (c) is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay or while absent as described in subsection (c)(3), the Secretary may retire the member, with retired pay computed under section 1401 of this title, if the Secretary also makes the determinations with respect to the member and that disability specified in subsection (b)."). Thus, it is not enough for Plaintiff "merely to show that his service connected injuries resulted in an eventually disabling condition or that at the time of release from active duty this condition was in an incipient state of pathological development." Gov't Mot. at 9. Rather, Plaintiff must show that the disability rendered him unfit for duty at the time of his discharge from active duty. Id. at 10. Since Plaintiff failed to do so, the ABCMR's decision was not arbitrary or capricious, unsupported by substantial evidence, or contrary to law. Id.

### b. Plaintiff's Cross–Motion And Response.

Plaintiff responds that the Government's Motion For Judgment Upon The Administrative Record should be denied and Plaintiff's Cross–Motion should be granted, because "Plaintiff's medical evaluation was arbitrary and not in accordance to law, [since the examining physician] failed to review Plaintiff's medical records for psoriasis and recognize the medical deficiencies." Pl. Resp. & Cross–Mot. at 3. The ABCMR's role is to determine whether an applicant "has demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record, and, if so, what corrections are needed to provide full and effective relief." Roth v. United States, 378 F.3d 1371, 1381 (Fed. Cir.2004) (internal citations and quotations omitted). When the ABCMR "fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate." Id. Further, the VA "conducted a thorough medical evaluation" of Plaintiff, and assigned him a 30 percent disability rating, effective September 23, 1974. Pl. Resp. & Cross–Mot. at 4. Plaintiff's psoriasis was "sever[e] and uncontrolled," as a 30 percent disabling rating means that "20 to 40 percent of the entire body or 20 to 40 percent of the exposed areas [are] affected." Id. (citing Pl.Ex. H–2).

In addition, psoriasis or history of psoriasis is a disqualifying medical condition. Id. Therefore, a higher disability evaluation should be assigned "when there is a reasonable doubt as to which of two percentage evaluations should be applied," and that "such doubt should be resolved in favor of the member, and the higher rating assigned." Id. If the complete facts concerning Plaintiff's condition had been known at the time of his separation, Plaintiff would have been entitled to retirement by reason of physical disqualification. Id. at 5. Reference to Plaintiff's subsequent medical history must be made in order to shed light on Plaintiff's physical condition while in service. Id. Evidence of "progressive deterioration" and later discovered symptoms "may be decisive" if it establishes that Plaintiff's incapacity while in service was substantially more serious than suspected and that previous diagnoses were incorrect. Id.

In sum, psoriasis is a cause for rejection of appointment, enlistment, and induction into the military. Id. at 6. Accordingly, the Government is "judicially estopped" from arguing Plaintiff was fit for duty with "chronic severe psoriasis," when psoriasis is a disqualifying medical condition. Id. The Government erred in failing to follow its own policy and procedures to retire Plaintiff for a "chronic and sever [e] skin disorder." Id.

### c. The Government's Reply.

The Government replies that the ABCMR's determination that Plaintiff did not have a "medically unfitting disability that required physical disability processing" was supported by substantial evidence. Id. at 2. The existence of psoriasis alone does not justify a determination of physical unfitness, and the examining physician determined that

Plaintiff's psoriasis was not sufficient to be classified as medically unfitting. *Id.* (citing Army Reg. 40–501). Moreover, Plaintiff described his own health as "good" on April 22, 1974. AR 84. Plaintiff noted that he had "skin diseases," but admitted that he was not unable to hold a job due to medical reasons. AR 84–85. As such, the ABCMR properly relied upon the examining physician's medical opinion and Plaintiff's own characterization of his health to conclude that Plaintiff did not have a medically unfitting condition at the time of discharge. Gov't Resp. & Reply at 3.

Moreover, the VA's decision to grant Plaintiff disability benefits for psoriasis does not require the Army to grant disability separation or retirement. *Id.* Although VA disability ratings are evidence in ABCMR proceedings, they do not bind the ABCMR. *Id.* (quoting *Myers*, 50 Fed.Cl. at 690). Further, the Army and the VA apply different standards in making disability determinations, so that a disability rating from the VA does not necessarily reflect any error or injustice on the part of the Army. *Id.* The Army's disability rating "is intended to compensate an individual for interruption of a military career after it has been determined that the individual suffers from an impairment that disqualifies him or her from further service." *Id.* (quoting AR 6). On the other hand, a VA rating awards disability to veterans for conditions that it determines were "incurred during military service and subsequently affect the individual's civilian employability." *Id.* at 3–4 (quoting AR 6–7).

An individual in the armed forces is not entitled to disability retirement unless the disability renders him unfit for military service at the time of separation. *Id.* at 4 (citing 10 U.S.C. § 1201); *see also* Army Reg. 635–40, ¶ 4–25 ("While a member may have medical conditions or physical impairments ratable under the Veterans Administration Schedule for Rating Disabilities, he will not be retired or separated because of those conditions or impairments unless they render him unfit because of physical disability as discussed below."). Plaintiff, however, was not unfit for service at the time of his discharge. *Id.* Therefore, the ABCMR's de-

cision was not arbitrary or capricious, unsupported by substantial evidence, or contrary to law, and the Government should be granted judgment on the Administrative Record. *Id.*

### 2. The Court's Resolution.

On June 29, 2006, the ABCMR denied Plaintiff's application to correct his military records and grant him a medical retirement. AR 3–9. The ABCMR determined that Plaintiff did not have a medically unfitting condition at the time of his discharge and that the VA's decision to grant Plaintiff disability benefits for psoriasis did not require the Army to grant Plaintiff disability separation or retirement. *Id.* The June 24, 2009 Complaint alleges that the "Army failed to recognize and medically retire Plaintiff with a disability upon discharge" on June 20, 1974. Compl. ¶ 3.3. Plaintiff also contends that his "[April 22, 1974] medical evaluation was arbitrary and not in accordance to law, [and] it failed to review [his] medical records for psoriasis and recognize the medical deficiencies." Pl. Resp. & Cross–Mot. at 3. Plaintiff further contends that the VA's decision to assign him a 30 percent disability rating on September 23, 1974, and later increasing the rating to 50 percent on August 18, 1993, prove that he should have received a medical retirement from the Army. *Id.* at 4–6.

 This court's review of the ABCMR's June 29, 2006 Final Decision is limited to assessing whether it was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Barnes v. United States*, 473 F.3d 1356, 1361 (Fed.Cir.2007) (holding that the court " 'will not disturb the decision of [a] corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence.' ") (quoting *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed.Cir.2005)). The ABCMR concluded that Plaintiff did not have a medically unfitting condition at the time of his discharge. AR 8. To reach this conclusion, the ABCMR relied upon the determination of Plaintiff's examining physician that Plaintiff's psoriasis was not sufficient to be classified as medically unfitting. AR 7, 83. The examining physician assigned Plaintiff a physical

profile of 11111, the best possible score under the Army's physical profile rating system. Army Reg. 40–501, ¶ 9–3b. Under the applicable Army Standards of Medical Fitness at the time, a "determination of unfitness is a factual finding that a member is unfit to perform the duties of his office, rank, grade or rating" and psoriasis renders a service member unfit for further military service only when it is "excessive and not controllable by treatment." *Id.* at ¶¶ 4–25(a), 3–33(w). Plaintiff's separation physical examination noted the existence of psoriasis, but did not indicate that it was "excessive and not controllable by treatment" at that time. AR 84. Further, Plaintiff described his own health as "good" on April 22, 1974 during his separation physical examination, and stated that he had never been unable to "hold a job" due to medical reasons. *Id.* Plaintiff also did not provide any information to the examining physician indicating that any of his health issues rendered him unfit for service, and indicated that he had never been discharged from military service because of physical reasons. *Id.* Thus, the ABCMR's conclusion that Plaintiff did not have a medically unfitting condition at the time of his discharge was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Barnes,* 473 F.3d at 1361.

The ABCMR also concluded that the VA's decision to grant Plaintiff disability benefits for psoriasis did not require the Army to grant Plaintiff disability separation or retirement. AR 8. Plaintiff argues that the VA's decision to award him a 30 percent disability rating on September 23, 1974, just a couple of months after his separation from the Army, proves that the ABCMR erred in its decision not to grant him disability retirement. Compl. ¶ 3.4; *see also* Pl. Resp. & Cross–Mot. at 4–6. The Army and the VA, however, apply different standards in making disability determinations. The VA assigns disability ratings "based on an evaluation of the individual's capacity to function and perform tasks in the *civilian world.*" *Haskins v. United States,* 51 Fed.Cl. 818, 826 (2002) (emphasis added). Conversely, the Army's disability rating "is intended to compensate an individual for interruption of a military

career after it has been determined that the individual suffers from an impairment that *disqualifies him or her from further service.*" AR 6 (emphasis added).

Therefore, "[a]lthough a VA rating decision may be relevant to consideration of an appropriate disability rating, it is not binding on the service branch." *Lockwood v. United States,* 2008 WL 7123404 *8 (Fed.Cl. June 5, 2008); *see also Hinkle v. United States,* 229 Ct.Cl. 801, 801 (1982) (per curiam) (holding that while the ABCMR does consider VA disability ratings as relevant evidence during its deliberations, it is not bound by them, and the ratings are "in no way ultimately determinative of claims for military disability retirement ... The [VA] does not determine fitness for military duty, which is the responsibility of the Secretary and military authorities."); DOD Directive 1332.18, ¶ 3.3 ("[T]he sole standard to be used in making determinations of physical disability as a basis for retirement or separation shall be unfitness to perform the duties of the office, grade, rank or rating because of disease or injury incurred while entitled to basic pay.").

A member of the armed forces who incurs a disability during active military service is not entitled to disability retirement unless that disability renders him unfit for further military service at the time of separation. 10 U.S.C. § 1201(a) ("Upon a determination by the Secretary concerned that a member described in subsection (c) is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay or while absent as described in subsection (c)(3), the Secretary may retire the member, with retired pay computed under section 1401 of this title, if the Secretary also makes the determinations with respect to the member and that disability specified in subsection (b)."). It is not sufficient for Plaintiff to show "that his service-connected injuries resulted in an eventually disabling condition or that at the time of release from active duty this condition was in an incipient stage of pathological development." *Cole v. United States,* 32 Fed.Cl. 797, 803 (1995) (internal

citations and quotations omitted). Instead, Plaintiff must prove that his condition rendered him unfit for duty at the time of his separation from the Army. Army Reg. 635–40, ¶ 4–25 ("While a member may have medical conditions or physical impairments ratable under the Veterans Administration Schedule for Rating Disabilities, he will not be retired or separated because of those conditions or impairments unless they render him unfit because of physical disability as discussed below."). In this case, Plaintiff's separation physical examination noted the existence of psoriasis, but the examining physician did not deem it sufficient to be classified as medically unfitting. AR 83. Thus, Plaintiff was not rendered "unfit because of physical disability" at the time of his separation as Army regulations require for entitlement to disability retirement. Army Reg. 635–40, ¶ 4–25.

Therefore, the court has determined that the VA's decision to grant Plaintiff disability benefits for psoriasis does not *ipso facto* cause the ABCMR's denial of Plaintiff's application for retirement benefits to be arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

## IV. CONCLUSION.

For the reasons stated herein, the Government's August 20, 2009 Motion For Judgment Upon The Administrative Record And Appendix is granted. Plaintiff's September 17, 2009 Cross–Motion For Judgment Upon The Administrative Record is denied. The Clerk of the United States Court of Federal Claims is directed to enter Judgment in favor of the Government.

**IT IS SO ORDERED.**