NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**VICTOR L. WADE,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2016-2263

---

Appeal from the United States Court of Federal Claims in No. 1:14-cv-00814-TCW, Judge Thomas C. Wheeler.

---

Decided: October 31, 2017

---

WILLIAM CASSARA, William E. Cassara, PC, Evans, GA, argued for plaintiff-appellee.

DANIEL S. HERZFELD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM; ADAM B. YOST, Office of the Judge Advocate General, United States Department of the Navy, Washington, DC.

---

Before PROST, *Chief Judge,* CLEVENGER and STOLL, *Circuit Judges.*

PER CURIAM.

The United States appeals from the Court of Federal Claims' decision reversing the decision of the Board for Correction of Naval Records ("Board") denying Victor Wade's request for record correction and military backpay after a positive cocaine urinalysis. *Wade v. United States*, 126 Fed. Cl. 638, 640–42 (2016). The Court of Federal Claims found the Board's decision arbitrary, capricious, an abuse of discretion, and not supported by substantial evidence. *Id.* at 645. Because the Board's decision was supported by substantial evidence and was not arbitrary, capricious, or contrary to law, we reverse.

## BACKGROUND

Mr. Wade served as a petty officer in the Navy for over 18 years without any disciplinary incidents. In 2007, Mr. Wade tested positive for cocaine after undergoing a random urinalysis. After reviewing the urinalysis test result and obtaining expert confirmation that the positive result was not due to Mr. Wade's medical prescription, the Navy charged Mr. Wade with violating Uniform Code of Military Justice ("UCMJ") Article 112a, 10 U.S.C. § 912a, Wrongful Use of a Controlled Substance. Mr. Wade consented to the imposition of a non-judicial proceeding under UCMJ Article 15 (10 U.S.C. § 815(b)).

## I.    Non-Judicial Proceeding

At his non-judicial hearing, Mr. Wade pled not guilty before his commanding officer and elected not to make a statement on the charge or the positive urinalysis. Mr. Wade's commanding officer determined that Mr. Wade had committed the offense after considering, *inter alia,* the urinalysis test result and expert statement validating

the test result, and imposed a non-judicial punishment, which included a reduction in rank, geographic restriction, extra duties, and forfeiture of one-half month's pay for two months.

Mr. Wade appealed his non-judicial punishment to the regional Navy Commander, stating that he felt "the maximum punishment" was "not fair and undeserving under the circumstances." J.A. 1111. Although Mr. Wade did not "dispute the integrity of the Navy Drug Lab," he "persistently [reaffirmed] that [he had] not and will not ever use any type of illegal drugs intentionally." *Id*. Mr. Wade also submitted a letter attesting to his character written by his supervisor at a security firm where he had taken a second job as a security officer to help support his family. The Navy Commander reviewed Mr. Wade's arguments and submitted materials and ultimately denied the appeal, finding the punishment awarded "within legally permissible limits" and "neither unjust nor disproportionate." J.A. 1106.

## II.    The Separation Proceeding

Mr. Wade was subsequently subjected to a mandatory administrative separation proceeding, which the Navy imposes upon the finding of a positive drug test result unless it was caused by administrative error or sanctioned reasons. Mr. Wade had previously acknowledged the risk of being subjected to additional administrative action when he accepted a non-judicial proceeding in place of a formal courts-martial proceeding. J.A. 1101–02 ("[A]cceptance of nonjudicial punishment does not preclude further administrative action against me. This may include being processed for an administrative discharge, which could result in an other than honorable discharge.").

One week before Mr. Wade's separation board hearing, Mr. Wade's counsel asked the Navy for permission to conduct an independent DNA test of Mr. Wade's urine

sample. Because the Navy understood Mr. Wade to be contesting the chain of custody for the sample, it confirmed with personnel in the chain of custody that there was "no discrepancy with the collection and transportation of the urine sample" to the testing facility, J.A. 1244–46, and denied Mr. Wade's request.

At his separation hearing, the separation board considered evidence offered by the Navy, including the positive urinalysis test, testimony from witnesses regarding the chain of custody of the test, and an expert witness who explained the positive test result. Mr. Wade's counsel cross-examined the witnesses and did not object to the Navy's denial of Mr. Wade's request for an independent DNA test of the urine sample.

The separation board also heard from character witnesses, and from Mr. Wade himself, who testified regarding his family, children, and his second job at the security firm. During the hearing, Mr. Wade advanced an innocent ingestion theory. He suggested that that he may have unknowingly ingested cocaine because his drink might have been spiked in retaliation for his imposition of disciplinary actions on unruly individuals while working as a security guard. Mr. Wade testified that the individuals knew that Mr. Wade was in the military and presumably knew the consequences of a positive drug test.

During the hearing, the separation board also elicited Mr. Wade's acknowledgement that he lied twice during his appeal process. First, Mr. Wade lied to his supervisor at the security firm about the reason that he was eliciting a character reference letter. Instead of telling his supervisor about the drug charge, Mr. Wade told her that he needed the reference because "he had been involved in an incident about being deployed overseas and it involved an officer." J.A. 1055. At the hearing, Mr. Wade testified that "I felt it was in my best interest not to tell her" the truth. J.A. 1068. Second, Mr. Wade lied about never

having used illegal drugs even though he had previously admitted to using marijuana one time prior to service, as reflected in his pre-enlistment file.

After considering all of the evidence and deliberating for thirty-three minutes, the separation board found that the Navy showed, by a preponderance of the evidence, that Mr. Wade had committed the offense. The separation board recommended that, considering his prior commendable service, Mr. Wade receive a General (Under Honorable Conditions) Discharge from the Navy. J.A. 1071–72, 1235.

Mr. Wade's commanding officer denied Mr. Wade's challenge to the separation board's recommendation and ultimately concurred with the separation board's recommendation to separate Mr. Wade. The Chief of Naval Personnel concurred with the recommendation of the separation board and Mr. Wade's commanding officer, and ordered Mr. Wade's separation. The Navy separated Mr. Wade after 19 years, 6 months, and 22 days on active duty.

### III.    Board for Correction of Naval Records

Mr. Wade appealed his non-judicial punishment and discharge to the Board three times. The Board denied each of Mr. Wade's appeals after determining that it was "unable to find any evidence that the [non-judicial proceeding] was not conducted in compliance with Part V of the MCM,"[1] and that "the [commanding officer] properly considered the positive urinalysis in making his decision that [Mr. Wade] wrongfully used cocaine." J.A. 1006–07. The Board held that it "was not persuaded that the [commanding officer or separation board] committed any error or injustice in determining that [Mr. Wade] wrongfully

---

[1]    "MCM" refers to the Manual for Courts-Martial, which interprets the UCMJ.

used cocaine." J.A. 1006. Regarding Mr. Wade's "additional arguments why the positive urinalysis should be discounted, *e.g.*, good military character, [expert witness's] opinions, innocent ingestion, etc.," the Board determined that the "[commanding officer]'s and [the separation board's] findings were not in error considering the 'preponderance of evidence burden of proof imposed on them when making a determination of misconduct." *Id.* The Board further determined that "it was not unreasonable for the [commanding officer] and [the separation board] to discount [Mr. Wade's] evidence and conclude misconduct occurred based simply on the positive urinalysis." *Id.*

## IV.    Court of Federal Claims' Decision

Mr. Wade filed a complaint with the Court of Federal Claims requesting, among other things, reinstatement, correction of his records, and backpay. The court first remanded the case to the Board for consideration of materials that the Board might not have reviewed. After the Board again affirmed the separation board's determination, the trial court granted Mr. Wade's motion for judgment on the administrative record, and entered judgment for Mr. Wade.

Specifically, the trial court held that the urinalysis test results could not establish knowing, wrongful use: "A low positive reading on a first-time offense, with no evidence of how the substance was ingested, does not establish a 'wrongful use,' and should not warrant the severe punishment of discharge from the military." *Wade*, 126 Fed. Cl. at 644. In arriving at its conclusion, the trial court considered evidence supporting Mr. Wade's good character and commendable service record, alleged procedural concerns including the Navy's denial of Mr. Wade's request for an independent DNA test on his urinalysis sample, the use of a summary transcript from the separation board proceedings in the record, and the length of the

separation panel's deliberations leading up to their recommendation. Ultimately, the trial court concluded that "the Navy's case against Mr. Wade fails because the Navy did not prove that he *knowingly* ingested cocaine," and that "[w]ithout a *knowing* consumption of a controlled substance, the ingestion could not have been *wrongful*." *Wade*, 126 Fed. Cl. at 644.

The United States appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

UCMJ Article 15 authorizes commanding officers to conduct non-judicial proceedings as "an administrative method of dealing with the most minor offenses." *Middendorf v. Henry*, 425 U.S. 25, 31–32 (1976). While these proceedings offer less severe punishments, they provide fewer legal protections for the accused than more formal court-martial proceedings. *Dumas v. United States*, 620 F.2d 247, 252–53 (Ct. Cl. 1980). For example, guilt may be found by a preponderance of the evidence in a non-judicial proceeding, rather than "beyond a reasonable doubt" as in a courts-martial proceeding. *See United States v. Reveles*, 660 F.3d 1138, 1141 (9th Cir. 2011), citing U.S. Dep't of Navy, Manual of the Judge Advocate General (JAGMAN), JAG INSTRUCTION 5800.7F, I-18-19 (June 26, 2012), http://www.jag.navy.mil/library/instructions/JAGMAN2012.pdf. Guilt in a separation proceeding is also proven by a preponderance of the evidence. *See* MILPERSMAN 1910-518 (Sep. 20, 2011), http://www.public.navy.mil/bupers-npc/reference/milpersman/1000/1900Separation/Documents/1910-518.pdf.

On review of an Application for Correction of Naval Records, the Board for Correction of Naval Records ("Board") will not disturb the separations board's findings and conclusions unless the applicant demonstrates the existence of probable material error or injustice. 32

C.F.R. § 723.3(e)(2). The Court of Federal Claims must affirm the Board's decision denying correction of Naval records "unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnes v. United States*, 473 F.3d 1356, 1361 (Fed. Cir. 2007) (internal quotations omitted); *see also Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). We review a decision of the Court of Federal Claims granting or denying a motion for judgment on the administrative record de novo, applying the same standard to the Board's decision as was applied by the Court of Federal Claims. *See Barnes v. United States*, 473 F.3d 1356, 1361 (Fed. Cir. 2007).

The arbitrary and capricious standard of review does not allow a reviewing court to reweigh the evidence, but rather requires it to determine whether the conclusion being reviewed is supported by substantial evidence. *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983). Thus, even if we would be inclined to find the facts differently in the first instance, we must accept the Board's view of the facts as long as the record contains "such relevant evidence as a reasonable mind might accept as adequate to support" the Board's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted); *see also Heisig*, 719 F.2d at 1156 ("[C]ourts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence."). Applying this standard of review to the record and the Board's determination in this case, we find the Board's conclusion to be supported by substantial evidence and not arbitrary, capricious, or contrary to law.

## I.

The MCM explains that Mr. Wade's charge contains two elements: (a) the use of a controlled substance and (b) that the use was wrongful. MCM, Pt. IV, ¶ 37b(2)(a)–(b). Regarding element (a), the MCM explains that the use

must be knowing and that "[k]nowledge of the presence of the controlled substance may be inferred from the presence of the controlled substance in the accused's body or from other circumstantial evidence. This permissive inference may be legally sufficient to satisfy the government's burden of proof as to knowledge." MCM, Pt. IV, ¶ 37c(10). Regarding element (b), the MCM provides that the use is wrongful "if it is without legal justification or authorization," and that such wrongfulness may be inferred "in the absence of evidence to the contrary." MCM, Pt. IV, ¶ 37c(5); *see also Bozin v. Sec'y of Navy*, 657 F. Supp. 1463, 1467 (D.D.C. 1987) ("The Manual . . . allows a 'permissive inference' of wrongfulness as flowing from proof of drug use.").

Military courts have repeatedly held that a positive urinalysis accompanied by expert testimony interpreting the urinalysis is sufficient to establish a permissive inference of wrongful use. *See, e.g., United States v. Green*, 55 M.J. 76, 81 (C.A.A.F. 2001) (noting that, under the Military Rules of Evidence, a urinalysis and expert testimony "provide[] a legally sufficient basis upon which to draw the permissive inference of knowing, wrongful use, without testimony on the merits concerning physiological effects"); *United States v. Harper*, 22 M.J. 157, 159 (C.M.A. 1986) ("We hold that these laboratory results of urinalysis coupled with expert testimony explaining them constituted sufficient evidence to support the military judge's finding beyond a reasonable doubt that appellant used [marijuana] on three occasions.").

Here, substantial evidence supports the Board's determination that Mr. Wade did not demonstrate probable material error or injustice in the separation board's finding of knowing, wrongful use of cocaine. For example, the Navy provided witnesses who testified that they personally observed Mr. Wade on the day of his urine collection, that the collection and testing was conducted in accordance with strict Navy protocols to prevent sample

tampering, and that the collection cup, personally initialed by Mr. Wade before the collection of the sample, never left the sight of the officers until the sample was collected, sealed, and prepared for mailing. A technician from the laboratory that analyzed the urine sample testified as to the extensive safeguards used to rule out errors resulting from damage, tampering, and other potential problems. The government also provided testimony from a technical expert, who discussed the Navy's testing procedures, as well as the implications and reliability of the test result. Mr. Wade did not dispute any of this testimony or provide any reason to question the accuracy of the test result.

The evidence presented by the Navy on the urinalysis was sufficient to support a permissive inference of knowing, wrongful use, even in the face of contrary evidence offered by Mr. Wade. "Standing alone, a positive urinalysis may be legally sufficient to sustain a conviction for wrongful use of a controlled substance, even in the face of contrary evidence offered by the defense." *United States v. Hobbs*, 62 M.J. 556, 558–59 (A.F. Ct. Crim. App. 2005) (citing *United States v. Ford*, 23 M.J. 331, 332 (C.M.A. 1987)); *United States v. Green*, 55 M.J. 76, 81 (C.A.A.F. 2001) ("A urinalysis properly admitted under the standards applicable to scientific evidence, when accompanied by expert testimony providing the interpretation . . . provides a legally sufficient basis upon which to draw the permissive inference of knowing, wrongful use.") Although Mr. Wade presented a theory of innocent ingestion, "it is the responsibility of the factfinder to determine what weight should be given to such evidence." *Green*, 55 M.J. at 81. Here, the factfinder was free to discredit Mr. Wade's innocent ingestion theory, given the positive test result and the two instances of Mr. Wade's untruthfulness that were revealed during the course of the proceeding. However benign the circumstances were of Mr. Wade's untruthfulness, the factfinders were entitled to make

credibility findings. And while Mr. Wade's strong evidence of good character and prior commendable service may suggest that Mr. Wade was not likely to knowingly ingest cocaine, this evidence does not undermine the substantial evidence supporting the Board's determination that Mr. Wade did not demonstrate probable material error or injustice in the separation board's finding of knowing, wrongful use of cocaine. For these reasons, we cannot agree with the trial court that the Board's determination was arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

Our conclusion is not altered by the trial court's rationale in holding otherwise. For example, the trial court determined that based on expert testimony, Mr. Wade's "relatively low positive reading . . . likely does not reflect the actions of someone trying to experience a drug's euphoric effects, but rather is more in keeping with a person's unknowing ingestion of a small amount of cocaine." *Wade*, 126 Fed. Cl. at 644. But the expert also testified that Mr. Wade's urinalysis result "doesn't rule out smoking crack cocaine three or four days before the urinalysis collection." J.A. 1044. In other words, the urinalysis results allowed for two possible factual conclusions. Even if we would find differently were we to decide facts in the first instance, our role as a reviewing court does not allow us to reweigh the evidence. We are likewise not convinced that the trial court's "procedural concerns" about the Navy's denial of Mr. Wade's request for an independent DNA test on his urinalysis sample, the use of a summary transcript from the separation board proceedings in the record, and the length of the separation panel's deliberations amount to legal error requiring reversal.

CONCLUSION

Because we find that the Board's decision was not arbitrary, capricious, contrary to law, or unsupported by

substantial evidence, we reverse the trial court's grant of Mr. Wade's cross-motion for judgment on the administrative record, and grant the United States' motion for judgment on the administrative record.

**REVERSED**

COSTS

No Costs.